■ In the Matter of Louis HEIMBACH, as Supervisor of the Town of Wallkill, et al., Respondents, v Louis V. MILLS, as County Executive of the County of Orange, et al., Appellants.—In a proceeding pursuant to CPLR article 78, *inter alia,* to set aside the 1976 real property tax equalization rates for the taxing districts within Orange County, as that rate was determined by the County Executive of Orange County, the appeal is from a judgment of the Supreme Court, Orange County, dated November 9, 1977, which invalidated (1) said rates and (2) subdivision (c) of section 3.02 of the Orange County Charter (Local Laws, 1968, No. 8 of County of Orange). Judgment reversed, on the law, with $50 costs and disbursements, and proceeding dismissed on the merits. The issue presented is the validity of a county charter provision which vests the power to fix county equalization rates in the elected county executive, rather than in the county legislature. More precisely, the question is whether a county charter provision dealing with county equalization rates may be inconsistent with sections 800, 802 and 804 of the Real Property Tax Law, which provide that the county equalization agency shall be the board of supervisors or appointed commissioners of equalization. We hold that it may. Neither section 1 nor section 2 of article IX of the State Constitution, the home rule provisions, is particularly dispositive. Section 2 is concerned with all units of local government and its focus is on general local legislative power, not charters or alternative forms of county government. Article IX (§ 1, subd [h]), on the other hand, specifically authorizes counties to "prepare, adopt, amend or repeal alternative forms [of county government] of their own." It also allows a transfer of functions from one layer of local government, such as a town, to another, such as a county, if approved in a double referendum, but we are not here concerned with such a transfer. On its face then, subdivision (h) of section 1 certainly does not prohibit what was done here, even if it does not specifically authorize it. The implementing legislation for article IX (§ 1, subd [h]) is article 4 of the Municipal Home Rule Law, part 1 of which is known as the County Charter Law. Section 33 thereof: (1) authorizes the board of supervisors of any county to prepare, adopt, amend or repeal a county charter, "Subject to restrictions in the constitution, in this article or in any other applicable law" (subd 1); (2) provides that the charter shall set forth the structure of the county government and the manner in which it is to function, the only limitation being that there shall be an elective board of

supervisors which shall determine county policies and exercise such other functions as may be assigned to it (subd 2); (3) directs that the charter provide (a) for the exercise by the board of supervisors of the powers of local legislation and appropriation, (b) for the various agencies or officers responsible for the performance of county powers and duties, and the manner of their selection, term of office and removal, and (c) for the equalization of real property taxes "consistent with standards prescribed by the legislature" (subd 3); and (4) provides that the charter may, *inter alia,* assign executive or administrative functions to elective or appointive officers (subd 4). Section 34 of the Municipal Home Rule Law enumerates certain limitations on the powers of counties to adopt charters. Thus, as to certain areas or subjects, a charter provision must be in accordance with laws enacted by the Legislature and/or may not supersede a general or special law. However, none of the enumerated areas or subjects concerns the determination of the county equalization rates. Contrary to Special Term's view, we hold that the only restriction upon a county charter provision dealing with county equalization rates is that contained in section 33 (subd 3, par c) of the Municipal Home Rule Law, namely, that it be "consistent with standards prescribed by the legislature". The restrictions on the power to adopt charters contained in subdivision 1 of section 33 (restrictions found "in the constitution, in this article or in any other applicable law"), do not encompass a requirement of consistency with general law, or with sections 800, 802 and 804 of the Real Property Tax Law, in particular. Consistency requirements of this nature are dealt with in section 34. Moreover, if such consistency were generally required, every charter provision would have to conform to every applicable general law and there could never be such a thing as an alternative form of government or effective home rule in the localities. Also, as Special Term itself recognized but nevertheless accepted, construing the subdivision 1 limitations to include the Real Property Tax Law as a whole leads to the absurd result that the more extensive grant of home rule power contained in section 33 (subd 3, par c) of the Municipal Home Rule Law is nullified by the absolute restriction in subdivision 1 of section 33. Granted, legislative enactments are not always a model of clarity, but a construction which results in the nullification of one provision by another in the very same section is to be avoided at all costs, especially since the Legislature has decreed that the County Charter Law be construed liberally (Municipal Home Rule Law, § 35, subd 3). Rather, it is clear that the restrictions "in any other applicable law", referred to in subdivision 1 of section 33, are only those which expressly provide that certain provisions of a law shall take precedence over all inconsistent "charter laws" (see, e.g., Real Property Tax Law, § 559, which establishes the primacy of a new title of that law on the correction of assessment rolls). That is not the situation with respect to the county equalization provisions of the Real Property Tax Law. Indeed, section 2006 of that law makes clear that said law is not to be deemed (unless expressly stated) to repeal or affect county charter provisions. Section 3.02 of the Orange County Charter, which assigns the equalization function to the elected county executive is, in our view, "consistent with standards prescribed by the legislature" (see Municipal Home Rule Law, § 33, subd 3, par c). We do not deem the assignment of the equalization determination to the board of supervisors in article 8 of the Real Property Tax Law to be a prescribed "standard" but, rather, a procedural matter. The determination itself is administrative in nature and its assignment to the board of supervisors was, no doubt, due to political considerations and the fact that, at that time, very few counties were governed by anything

other than a board of supervisors. If mitigating the possibility of discrimination against one town by others, for example, was a consideration, we would merely note that the county executive is elected by the voters of the entire county and that these same voters have approved assignment to him of the equalization determination. Furthermore, had the Legislature intended to require compliance with the Real Property Tax Law equalization procedures, it could easily have so stated (compare the Statute of Local Governments, § 10, which makes certain powers subject to "such purposes, standards and procedures" as the Legislature may prescribe). Consistency with prescribed standards, therefore, simply requires that the county follow the substantive formulas set forth in the Real Property Tax Law in determining the equalization rates. Petitioners' challenge to the merits of the determination itself must be pursued before the State Board of Equalization and Assessment. We would also add that we believe that requirement of subdivisions 2 and 3 of section 804 of the Real Property Tax Law as to filing an abstract of supporting evidence with the equalization rates was, essentially, complied with here, although we deem this a procedural matter which may be validly superseded in the subject charter. Damiani, J. P., Titone, O'Connor and Martuscello, JJ., concur. [91 Misc 2d 958.]