OPINION OF THE COURT
Thomas Aloi, J.
This is a proceeding brought pursuant to CPLR article 78. Petitioner demands various forms of relief in connection with a mosquito-spraying program conducted by the Village of Elbridge. Since among other things, petitioner alleges violations of New York’s SEQR provisions (ECL art 8), the County of Onondaga and the Commissioner of Environmental Conservation were joined as necessary parties respondent.
The following facts are not in dispute: on May 16, 1979 pilot Donald Hatch performed an aerial spraying of the village, pursuant to the mosquito comfort control program in effect since 1972. Mr. Hatch is licensed by the Department of Environmental Conservation, and the chemical he used, "Baytex”, is a pesticide approved by the commissioner for restricted use (6 NYCRR 326.2 [a] [28]).
On May 16, 1979 petitioner’s son participated in an athletic event on the grounds of the Elbridge Elementary School, where he allegedly came into contact with the spray. Petitioner alleges that he, too, was exposed to the chemical while within the village, and that at his home in the Town of Elbridge (outside the village limits) the "offensive odor” of pesticides lingered for about 15 hours.
Petitioner claims that the village’s spraying was performed without the required permit from the county health department, and was carried out in a manner inconsistent with "Baytex” label instructions in violation of State and Federal laws. He further alleges that a pesticide program such as this requires an analysis of environmental significance and the filing of an environmental impact statement. He asks this court to direct the village to comply with SEQR and county, State, and Federal regulations; to give "adequate notice” before spraying; and to confine the pesticide spray within village limits.
It is incontrovertible that mosquito control for the benefit of *388 residents is within the village’s powers; the real controversy here presented is one of the proper procedure for implementing the village’s program. As a practical matter, the last two items of relief sought by petitioner would make aerial spraying impossible. Based upon the affidavit of the pilot and arguments on the motion, the court concludes that it would not be feasible to require that the spray be confined exactly within the village limits, since some "drift” appears to be inevitable. Further, the unpredictability of weather conditions necessary for spraying precludes the possibility of advance warning of the times of the various applications. All that can be asked of the village in these respects is that it take all reasonable precautions to avoid populated areas such as playgrounds, and to keep the chemicals within village boundaries.
This court is not the proper forum for determining whether in his applications of pesticide the pilot is violating county, State or Federal regulations. The pesticide is approved for use, the pilot is licensed to conduct aerial sprays, and any suspected violation of the regulations regarding pesticides should be reported to the agencies responsible for their enforcement. In this connection, however, it should be noted that the village must obtain a county permit each year before spraying, so that the health department may avoid potentially harmful duplication. (Onondaga County Sanitary Code, art 11, §§ D, E.)
The remaining issue is that of the village’s alleged failure to comply with the provisions of SEQR. The village argues that no environmental impact statement is required, and in the alternative that if one is necessary, the responsibility lies with the county, which issues permits, or the department, which licensed the pilot and approved the pesticide. The county and the department both take the position that a determination of significance and filing of an impact statement are the duty of the village.
The court agrees with the county, that its issuance of a permit is a purely ministerial act and thus exempt from the requirements of SEQR. (ECL 8-0105, subd 5, par [ii]; 6 NYCRR 617.2 [n] [2].) The permits are required merely to enable the county health department to monitor local spraying programs, and are by no means part of a county-wide activity involving the exercise of discretion or control. The two programs are entirely different: the village’s aerial spraying is directed to the comfort of residents, while the county’s land-based pro *389 gram is concerned solely with disease control. For these reasons, it is clear to the court that the county had no obligation to perform the initial steps of the SEQR process with respect to the village's spraying program (SEQR compliance in connection with the county’s own spraying program is an issue not now before this court).
As between the village and the department, however, the situation is very different. This court is convinced that the village’s mosquito program is precisely the sort of action which the framers of SEQR intended that agencies conduct "with an awareness that they are stewards of the air, water, land, and living resources” (ECL 8-0103, subd 8), so that "due consideration is given to preventing environmental damage” (ECL 8-0103, subd 9). One of the criteria for determining whether an agency action is of such potential significance as to require an environmental impact study and statement, is its possible adverse effect upon the public health or safety (6 NYCRR 617.11 [a] [7]). While this court does not possess expertise to determine whether aerial spraying of "Baytex” poses a danger to public health, the warnings on the label are enough to give anyone pause. And that, precisely, is the purpose of SEQR: to provide before damage is done, for a "pause” during which expertise may be sought, and alternatives explored. Indeed, SEQR was enacted in part because agencies were failing to give "sufficient consideration to environmental factors when undertaking or approving various projects or activities” (Governor’s Memorandum, NY Legis Ann, 1975, p 438).
Without investigation, the village is not in a position to say with any certainty that its repeated spraying of this pesticide over a period of years is without significant environmental impact and poses no hazard to public health and safety. It is worthy of note that on this motion, the village made no attempt to counter petitioner’s allegations in this regard, beyond what amounts to a general denial and an attempt to shift responsibility. It is the opportunity to acquire such knowledge, and to incorporate it into agency planning, which SEQR was designed to provide. SEQR does not prohibit actions which may have adverse effects upon environmental quality, but instead provides a mechanism whereby planners and affected citizens may educate themselves, and conduct their affairs with a greater awareness of the environmental consequences of their action (Koppell, Environmental Protection *390 Law at Issue, NYLJ, May 6, 1976, pp 1, 4). Since in this case neither agency appears to have performed even an analysis of significance of the environmental impact of the village’s pesticide program, the court is forced to conclude that SEQR has not been complied with.
This court is not alone in finding that programs using such chemicals necessitate the legislatively mandated "pause” for study. New York’s SEQR was modeled upon and is nearly identical to the National Environmental Policy Act of 1969 (US Code, tit 42, § 4321 et seq. [NEPA]; see legislative history L 1975, ch 612). Federal courts have consistently found NEPA applicable to the use of herbicides (Lee v Resor, 348 F Supp 389; Citizens Against Toxic Sprays v Bergland, 428 F Supp 906) and pesticides (Environmental Defense Fund v Hardin, 325 F Supp 1401). In these cases, neither the existence of the program prior to NEPA (Lee v Resor, supra) nor the registration of the chemical pursuant to the Federal Insecticide Act (Environmental Defense Fund v Hardin, supra) absolved the agencies involved from compliance with NEPA.
It therefore remains to determine which agency should be charged with responsibility for compliance with SEQR. The village argues that since the Commissioner of the Department of Environmental Conservation is vested with exclusive authority to regulate pesticides within the State (ECL 33-0303, subd 1), the department should bear the burden of SEQR. In addition, the village points out that it does not have the expertise to make such a determination or to prepare an environmental impact statement. Neither of these arguments is persuasive. The commissioner’s authority to approve pesticides for general use assures uniformity throughout the State —but each local program of necessity demands investigation of local conditions, and a decision based upon the impact of an action upon the particular area affected. If necessary, the village can hire expert assistance to prepare an impact statement, just as it hired the pilot to conduct the spraying.
It seems only reasonable that the study be performed by the agency whose action will be felt in a particular locality: the effectiveness and the dangers of the village’s pesticide program reasonably should be weighed by those most concerned. After considering the information which compliance with SEQR should provide, the villagers will be free to choose whether to continue their program in its present form or to make changes in the type of pesticide or the method of its *391 application to minimize any adverse environmental effects. SEQR merely assures that their decision will not be made in ignorance.
The court recognizes that such an investigation places a burden upon the village, but it is a burden which the Legislature obviously did not find more onerous than policy warranted, since local agencies are specifically included within the SEQR process. (6 NYCRR 617.1 [c], 617.2 [c]; ECL 8-0105, subd 2.)
In view of the village’s insistence throughout these proceedings that its mosquito control program is without significant environmental impact, it would be a waste of judicial time to return this matter for the mere formality of another expression of the village’s position. Having in effect performed the first step of the SEQR process by its actions before and in connection with these proceedings, the village will now be directed to perform an environmental impact study and file a statement. However, the court wishes to point out that in its opinion, the village’s failure to do so previously was the result of an erroneous interpretation of SEQR’s provisions rather than a deliberate avoidance of its requirements.
In accordance with all of the foregoing, the Village of Elbridge is enjoined from conducting any further aerial spraying in connection with its mosquito control program until it has complied with ECL article 8.