■ WEBSTER ASSOCIATES et al., Appellants, v TOWN OF WEBSTER et al., Respondents. — Judgment unanimously affirmed, without costs. Memorandum: The order of Special Term should be affirmed for the reasons stated by Justice David O. Boehm, except we add the following observations concerning the sufficiency of the "alternatives" section of the environmental impact statement (EIS) filed by Expressway Associates (Expressway), and in this area our holding is based on different grounds from those relied on by Special Term. We recite only those facts which are relevant to our consideration of this question. Expressway submitted an EIS to the Webster Town Board as lead agency with relation to a proposed regional shopping mall (Expressway Mall). Appellants contend that both the draft environmental impact statement (DEIS) and the final environmental impact statement (FEIS) submitted by Expressway were inadequate and failed to comply with the State Environmental Quality Review Act (SEQRA). Webster Associates, one of appellants and a rival developer, has also proposed to build a mall in Webster (Webster Mall) of similar size to Expressway Mall on a site one-half mile away. We confine our discussion to appellants' contention that the DEIS submitted by expressway did not comply with SEQRA because it did not include the Webster Mall proposal as an alternative to its project. Expressway's FEIS does contain a detailed study of the proposal of the Webster Mall as an alternative project. Appellants contend, however, that this was insufficient to cure the deficiency in the DEIS. They argue that the DEIS must contain a description and evaluation of reasonable alternatives, whether or not the alternative is available to the applicant preparing the EIS, and that the filing of new material in a FEIS is improper unless the DEIS is recirculated for comment with the

additional material, a procedural step not taken in this case. Justice Boehm ruled that SEQRA does not require an EIS submitted by a private developer to consider alternatives outside its control. Consequently, he found that Expressway was not required to discuss Webster Mall in its EIS. Without determining the scope of alternatives which must be considered in an EIS prepared pursuant to SEQRA, we hold, on the basis of the entire record, that Webster Mall was given full consideration by the Webster Town Board as an alternative to Expressway's proposal and no violation of SEQRA occurred. ECL 8-0109 requires that the EIS include a discussion of reasonable alternatives to the proposed action. 6 NYCRR 617.14 (f) (5) provides that, in the body of a DEIS and FEIS, there should be a discussion of reasonable alternatives to the action "which would achieve the same or similar objectives" and that the "description and evaluation should be at a level of detail sufficient to permit a comparative assessment of the alternatives discussed". Since Expressway's FEIS considers Webster Mall as an alternative project, appellants' argument is really focused on the DEIS discussion of alternatives, in which Expressway admittedly considered only alternatives for its own site. As appellants argue, Federal courts construing the National Environmental Policy Act (NEPA), upon which SEQRA is modeled (see *H.O.M.E.S. v New York State Urban Dev. Corp.,* 69 AD2d 222, 231) have uniformly held that a FEIS which is not circulated for comment among the general public and subjected to public scrutiny before final action is taken cannot perfect a deficient DEIS (see *Natural Resources Defense Council v Callaway,* 524 F2d 79, 93-94; *Essex County Preservation Assn. v Campbell,* 399 F Supp 208, 215-216, affd 536 F2d 956, 960-961; *Appalachian Mountain Club v Brinegar,* 394 F Supp 105, 121-122). "There cannot be responsible decision-making when data appears in the final EIS without being subject to the critical evaluation that occurs in the draft stage. There are two dangers that can occur when information appears in the final EIS for the first time: (1) the ultimate decision-makers will believe that there is no controversy due to the lack of critical comment; and (2) objective errors without being red-flagged would go unnoticed" (*Appalachian Mountain Club v Brinegar, supra,* pp 121-122). However, provisions of SEQRA concerning the circulation and review of the FEIS differ from NEPA. Until July 30, 1979, the Federal rules did not require the solicitation of public comments and essentially provided only for an "in-house review" of the FEIS (see *Appalachian Mountain Club v Brinegar,* 394 F Supp 105, 121, *supra;* see, also, 43 Fed Reg 55978 *et seq.*). The State rules regarding circulation and review of the FEIS provide for the following steps: (1) filing of the FEIS and notice of its completion, and circulation of copies to numerous designated State, local and regional agencies and interested persons, including members of the public (ECL 8-0109, subd 6; 6 NYCRR 617.8 [f], 617.10); (2) allowance for a minimum 10-day public and agency comment period on the FEIS prior to a decision on the proposed project (ECL 8-0109, subd 6; 6 NYCRR 617.9 [a]); and (3) consideration of the FEIS by the agency whose approval is required for the proposed project prior to the making of a final decision on the project and the preparation of a written statement of the facts and conclusions relied upon in the FEIS supporting the agency's final decision with respect to the proposed project (ECL 8-0109, subd 8; 6 NYCRR 617.9 [c], [d]). All the steps required by State law regarding the circulation and review of the FEIS were taken in this case. Unlike *Appalachian Mountain Club* and the other cases cited above, the FEIS was subject to public scrutiny. It would be ignoring reality, in any event, to suggest in this case that simply because a discussion of the Webster Mall alternative appeared for the first time in the FEIS that the Webster Town Board, as ultimate decision maker, was not aware of the Webster Mall as an

alternative proposal or believed that a controversy did not surround its consideration of the Expressway Mall, due to the lack of critical comment. The question of which mall should be approved by the town board was a major issue in the 1979 town board election which saw the Democrats, who favored Webster Associates, lose their majority to the Republicans, who favored Expressway. Webster Associates filed a lengthy DEIS concerning its mall with the town board on November 16, 1979 and obtained town board approval of its project, only to have a court later declare the town board's actions invalid (*Bliek v Town of Webster*, 104 Misc 2d 852). Expressway submitted its DEIS on May 21, 1980 in which it acknowledged that the "primary issue of controversy" was whether Expressway Mall or the Webster Mall or both should be developed. It indicated that it was "not the purpose of the DEIS to definitively address the major issue controversy; the report attempts only to provide the facts necessary for a rational analysis of the issues involved". The DEIS was circulated and subjected to extensive public comment, not only the general public, but also by Webster Associates, which was present at every public hearing which took place and retained its own engineering firm to review the DEIS. As a result of this review, Webster Associates submitted to the town board a lengthy critique of the DEIS prior to the close of the comment period. It is within this context that Expressway prepared its FEIS. The FEIS primarily contained responses to the public comment and the objections raised by Webster Associates, and a comparative analysis of the two malls. It was submitted on September 16, 1980 and circulated for comment on September 26, 1980, all in accordance with the applicable statutes and regulations. Final action on the proposed mall was not taken by the town board until nearly a month later, following a public hearing. In taking this final action, the town board prepared a written statement of the facts and conclusions relied upon in the FEIS to support its decision (see ECL 8-0109, subd 8) and in it acknowledged that it took notice of the contents of the DEIS of Webster Associates which it found provided it with sufficient detail to evaluate the relative adverse environmental impacts of the two proposals. An EIS is an " 'alarm bell' whose purpose is to alert responsible public officials to environmental changes before they have reached ecological points of no return" (*Matter of Town of Henrietta v Department of Environmental Conservation of State of N. Y.*, 76 AD2d 215, 220). It is intended to compel "agencies to give serious weight to environmental factors in making discretionary choices" (*Monroe County Conservation Council v Volpe*, 472 F2d 693, 697). It requires decision makers to take a "hard look" at the environmental considerations of a proposed project (*H.O.M.E.S. v New York State Urban Dev. Corp.*, 60 AD2d 222, 232, *supra*) and to take those considerations into account " 'to the fullest extent possible' " (*Matter of Town of Henrietta v Department of Environmental Conservation of State of N. Y., supra*, p 223). As long as that is done any defect in procedure is *de minimus*. The record is clear that the Webster Mall alternative was subject to intensive public scrutiny and comment from the very beginning of the SEQRA process initiated by Expressway. The process took approximately one year, during which the DEIS and FEIS were filed, three public hearings were held and an extensive comment period was provided. The environmental impacts of the two projects were seriously weighed by the town board before final approval was given to the Expressway Mall. Even if it could be argued that the procedures required by SEQRA were not followed to the letter, they were certainly within the spirit of the law. "The only role for a court is to insure that the agency has taken a 'hard look' at environmental consequences; it cannot 'interject itself within the area of discretion of the executive as to the choice of action to be taken' *Natural*

*Resources Defense Council* v. *Morton* * * * 458 F. 2d 827, 838 (1972)." (*Kleppe v Sierra Club,* 427 US 390, 410, n 21.) Special Term found that there was no area of "environmental consequence which has not been adequately aired". "Having failed to convince the trial court that the EIS was inadequate, the [plaintiff] must now demonstrate that the lower court's findings accepting the EIS as adequate and the decision to proceed as permissible were clearly erroneous" (*Sierra Club v Morton,* 510 F2d 813, 818). Appellants have failed to make this showing. The grant of summary judgment and dismissal of the declaratory judgment action for failure to state a cause of action and raise a triable issue of fact was proper. (Appeal from judgment of Monroe Supreme Court, Boehm, J. — summary judgment.) Present — Simons, J. P., Hancock, Jr., Callahan, Denman and Schnepp, JJ.