OPINION OF THE COURT
Fuchsberg, J.
This appeal calls upon us to decide the extent to which the State, by enactment of the Alcoholic Beverage Control Law (L 1934, ch 478), has pre-empted the field of regulation of establishments which sell alcoholic beverages.
The issue arises in the context of criminal prosecutions based on informations charging the named defendants, 125 patrons of an unlicensed “after hours” club,[1] with violation of section 44-14 of the Municipal Code of the City of Rochester. The ordinance states that “[n]o person shall patronize an establishment which is selling or offering for *468 sale alcoholic beverages after 2:00 a.m. in violation of the Alcoholic Beverage Control Law”.[2]
After thorough briefing and extensive oral argument by both sides on a motion defendants brought on under CPL 170.30, the Criminal Division of the Rochester City Court, of the view that the State had not delegated “the power to restrict and regulate the sale of alcoholic beverages”, dismissed the accusatory instruments against all the defendants. On the People’s appeal to the Monroe County Court, that tribunal affirmed. Certification by a Judge of this court, acting pursuant to CPL 460.20, now brings the matter before us for review. For the reasons which follow, we believe the courts below were correct in the decisions they reached.
Our analysis begins with the general observation that, since the fount of the police power is the sovereign State, such power can be exercised by a local governmental unit only when and to the degree it has been delegated such lawmaking authority (56 Am Jur 2d, Municipal Corporations, Counties and Other Political Subdivisions, § 428). As pertinent here, in the spirit of this broad principle, article IX (§2, subd [c], par [ii]) of the New York State Constitution specifies that any local law be “not inconsistent with * * * any general law” and that the legislative power of local government is limited “to the extent that the legislature shall restrict the adoption of such a local law”.
That such “inconsistency” or “restriction” is not limited to cases of express conflict between local and State laws is apparent from our decision in Robin v Incorporated Vil. of Hempstead (30 NY2d 347), a case which posed a like issue regarding the State’s statutory scheme for the regulation of medicine. In Robin, the nature of the subject matter being regulated, the lack of any perceived “real distinction” between any particular locality and other parts of the State in this regard, and the accompanying legislative declaration that the State’s Department of Health “ ‘shall have the central, comprehensive responsibility for the development and administration of the state’s policy with respect to hospital and related services’” combined to *469 demonstrate a “design to pre-empt the subject of abortion legislation and occupy the entire field so as to prohibit additional regulation by local authorities” (id., at p 350).
On these bases, Robin struck down a village law which did not deviate in the slightest from the State statute’s definition of a “justifiable abortional act”, but merely added the precaution that such an act “be performed only in a hospital duly licensed and accredited under the New York State Department of Health, and having equipment and facilities acceptable to the State Hospital Review and Planning Council”. So holding, we emphasized that, in the presence of factors akin to those found in Robin, a local government is precluded from legislating on the same subject matter unless it has received “clear and explicit” authority to the contrary (id., at pp 350-351; Matter of Kress & Co. v Department of Health of City ofN.Y., 283 NY 55, 60 [State’s Agriculture and Markets Law’s regulation of the manufacture and sale of frozen desserts held pre-emptive]).
Measured against these criteria, the Alcoholic Beverage Control Law is surely pre-emptive. For one thing, the regulatory system it installed is both comprehensive and detailed. Of particular relevance here, it endows the State Liquor Authority with the power to grant licenses under defined circumstances and it provides for criminal sanctions against unauthorized purveyors of alcoholic beverages (Alcoholic Beverage Control Law, §§ 17, 55-99, 100, 130). Among other details, it specifies that such beverages may be sold “at retail for on-premises consumption” daily until 4 a.m. and that the actual consumption thereof may be permitted for one-half hour thereafter (Alcoholic Beverage Control Law, § 106, subd 5). It also carries its own provision against disorderliness being permitted on such premises (Alcoholic Beverage Control Law, § 106, subd 6). Moreover, the State’s statutory structure imposes its own direct controls at the local level by creating local alcoholic beverage control boards and by, for example, granting these administrative instrumentalities the power to further restrict the hours during which alcoholic beverages may be sold at retail (Alcoholic Beverage Control Law, §§ 30-43, 43, subd 3).
*470 Nor is the policy behind the legislation left to the imagination. Section 2 of the Alcoholic Beverage Control Law declares it the goal of the State “to regulate and control the manufacture, sale and distribution within the state of alcoholic beverages for the purpose of fostering and promoting temperance *** and obedience to law”. It is not necessary to weigh these objectives qualitatively against the considerations of health with which the court dealt in Robin to appreciate that implicitly here too no “real distinction” is to be drawn between the parochial interest of a particular city or other locality on the one hand and that of the State as a whole on the other. In short, the State made a studied decision that the problems to which the statute was directed, and which the Federal Government has failed to solve (see US Const, 18th, 21st Arndts), would be more effectively met not at the local community level but by State action alone.
It should come then as no surprise that the courts (see Tad’s Franchises v Incorporated Vil. of Pelham Manor, 35 NY2d 672, affg 42 AD2d 616; Matter ofTJPC Rest. Corp. v State Liq. Auth., 61 AD2d 441),[3] the New York State Moreland Commission on the Alcoholic Beverage Control Law (Study Paper No. 1, Relationship of the Alcoholic Beverage Control Law and the Problems of Alcohol, p 2 [1963]);[4] New York State’s Attorney-General (1972 Opns A tty Gen 97, Feb. 22, 1972) and its Comptroller (31 Opns St Comp, 1975, p 100, No. 75-729) all have recognized that the Alcoholic Beverage Control Law is exclusive and Statewide in scope and that, thus, no local government may legislate in this field.
*471 Nevertheless, the People urge that, even conceding its pre-emptive character, the Alcoholic Beverage Control Law is applicable only to licensed clubs whereas the local law regulates unlicensed ones. Noting that the ordinance contains no such limitation, we believe the short and yet more sweeping answer to this argument is that the State statute embraces all sellers of alcohol. Lest there be any doubt, as indicated earlier, the Alcoholic Beverage Control Law includes a provision making it a crime to sell such beverages without a license. It also contemplates the enjoining of unlicensed sales and the seizure and forfeiture of the property of establishments which evade this ban (Alcoholic Beverage Control Law, § 123). Further, while the» Alcoholic Beverage Control Law in part speaks of “licensees”, in its punitive and prohibitory provisions it is targeted in the main to “any person” (e.g., Alcoholic Beverage Control Law, § 130, subds 3, 5; see People v O’Neil, 280 App Div 145).
We also reject the People’s related attempt to erect a barrier between the State law and the local ordinance by contending that the former is aimed exclusively at the improper activities of operators of alcoholic beverage dispensing businesses and the latter at the conduct of their patrons. Such a distinction, even if it otherwise existed, became irrelevant once the State carved out this area of regulation for itself. And, this is nonetheless true because the State consciously decided that to concentrate on sellers and selling rather than drinkers and drinking would be the most “effective and appropriate” means of carrying out its self-appointed mission (New York State Moreland Commission on the Alcoholic Beverage Control Law, pp 2, 53).
Finally, all this is not to say that establishments selling alcoholic beverages are exempt from local laws of general application such as, to take several examples, one requiring smoke alarms in all business premises, or one forbidding dumping of refuse on city sidewalks, or one prohibiting disorderliness at any “place of public resort” (People v Hardy, 47 NY2d 500). But, contrary to the People’s position, the ordinance here is not of this sort. By dealing solely with the actions of patrons of establishments which sell alcoholic beverages, it impinges impermissibly on the ex- *472 elusive Alcoholic Beverage Control Law. Further, by prohibiting persons from patronizing such establishments at times when State law would permit them to do so, the local law, in direct opposition to the pre-emptive scheme, would render illegal what is specifically allowed by State law (see, e.g., Wholesale Laundry Bd. of Trade v City of New York, 12 NY2d 998, affg 17 AD2d 327).
Consequently, the order of the County Court should be affirmed.[5]

. A private club incorporated pursuant to State law as a nonprofit corporation which sells liquor only to members is not exempt from regulation under the Alcoholic Beverage Control Law (People v Hardy, 47 NY2d 500, 504).

. The balance of this local law reads: “The terms ‘selling’ and ‘sale’ shall have the same definitions as found in Section 3 (28) of the Alcoholic Beverage Control Law”.

. The People’s reliance on People v Hardy (47 NY2d 500, supra) for its contention that the State has not pre-empted the field of regulation of sale and consumption of alcoholic beverages is misplaced. In fact, review of the original record in that case indicates that no pre-emption issue was ever raised in this court. Accordingly, we did not discuss or decide whether the City of Rochester was pre-empted from including establishments which sell alcoholic beverages in a ban on the maintenance of a “public resort” which disturbs the peace, comfort or decency of a neighborhood. In any event, unlike the one here, the ordinance in Hardy was not directed at and did not regulate the sale or consumption of alcoholic beverages. Rather, it was a general ban on disturbances of the peace at any “place of public resort”.

. The New York State Moreland Commission,on the Alcoholic Beverage Control Law was appointed by Governor Nelson A. Rockefeller by executive order to conduct “a thorough study and reappraisal” of the Alcoholic Beverage Control Law (see Public Papers of Governor Nelson A. Rockefeller, pp 572-574 [1963]). The nature and authority of the Moreland Commission are discussed in Seagram & Sons v Hostetter (16 NY2d 47).

. Aside from their pre-emption point, defendants also grounded their motion to dismiss the informations on what they deemed to be the ordinance’s unconstitutional vagueness and overbreadth in contravention of due process and freedom of association guarantees. As was the case with the courts below, in view of our finding of pre-emption, we have no occasion to consider or pass on either question.