In the Matter of AMYAS AMES et al., Respondents, v WILLIAM S. SMOOT et al., Comprising the Board of Trustees of the Incorporated Village of Laurel Hollow, Appellants.

Second Department, December 27, 1983

### APPEARANCES OF COUNSEL

*Farrell, Fritz, Caemmerer, Cleary, Barnosky & Armentano, P. C. (George J. Farrell, Jr., John M. Armentano* and *Ellen M. Young* of counsel), for appellants.

*Eisenman, Allsop & Strack (James A. Eisenman* of counsel), and *Chadourne, Parke, Whiteside & Wolff (Paul G. Pennoyer, Jr., Charles K. O'Neill* and *James C. La Forge* of counsel), for respondents (one brief filed).

### OPINION OF THE COURT

LAZER, J. P.

Has the enactment of article 33 of the Environmental Conservation Law (ECL) pre-empted the field of pesticide regulation and thus precluded local governments from

legislating in that area? Since we believe that it has, we conclude that the local law enacted by the Incorporated Village of Laurel Hollow prohibiting aerial spraying of pesticides was void and that it could be repealed without the filing of an environmental impact statement.

Although the enactment under immediate challenge is Laurel Hollow's Local Law No. 1 of 1982, which repealed Local Law No. 1 of 1981, the real issue in this case is the validity of the 1981 local law, the enactment that proscribed aerial spraying of pesticides. Seeking to save the ban on aerial spraying, three Laurel Hollow homeowners commenced a CPLR article 78 proceeding for a declaration that the repealing legislation was invalid since it had been enacted without compliance with the State Environmental Quality Review Act (SEQRA) (ECL art 8) because of the failure to file an environmental impact statement. Such a statement must be filed before an environmental "action" is taken (see ECL 8-0109). Whether there is merit to petitioners' contention depends on whether the prohibition against aerial spraying was a valid exercise of local legislative power not in conflict with State law. The village position is that the prohibitory local legislation was a nullity because the regulation of pesticides has been preempted by the State. In reaching the substance of the issue, we treat the article 78 proceeding as a declaratory judgment action since it is rather settled that article 78 is not an appropriate vehicle for the review of legislative action (CPLR 103, subd [c]; *Matter of Lakeland Water Dist. v Onondaga County Water Auth.,* 24 NY2d 400, 407).

A municipal corporation is a political subdivision of the State and its lawmaking authority can be exercised only to the extent that it has been delegated by the State (*People v De Jesus,* 54 NY2d 465; *Matter of Marcus v Baron,* 57 NY2d 862, revg 84 AD2d 118 for reasons stated in dissenting opn at App Div 84 AD2d 118, 134-138). The State Constitution and various enabling statutes grant municipalities the power to adopt local laws (1) relating to their "property, affairs or government" provided that the local legislation is not inconsistent with the Constitution or any general law (see NY Const, art IX, § 2, subd [c], par [i]; Municipal Home Rule Law, § 10, subd 1, par [i]; Statute of

Local Governments, § 10), and (2) with reference to certain enumerated subjects, including "[t]he government, protection, order, conduct, safety, health and well-being of persons or property therein" except "to the extent that the legislature shall restrict the adoption of such a local law" (see NY Const, art IX, § 2, subd [c], par [ii], cl [10]). While regulation of pesticide use clearly involves the "safety, health and well-being" of the population, local laws exercising police powers are invalid if they are inconsistent with State law (see *Wholesale Laundry Bd. of Trade v City of New York,* 18 AD2d 968, affd 12 NY2d 998 upon opn at App Div at 17 AD2d 327) unless the local legislation falls within certain provisions authorizing local laws that supersede State legislation (see, e.g., Municipal Home Rule Law, § 34, subd 3; *Matter of Heimbach v Mills,* 67 AD2d 731 [county charters]; Municipal Home Rule Law, § 10, subd 1, par [ii], cl d, subcl [3]; cl e, subcl [3]; *Matter of Sherman v Frazier,* 84 AD2d 401 [town and village supersession powers]). Since the instant local laws are not encompassed by the statutory exceptions which permit inconsistency with State legislation, resolution of the appeal depends on whether Local Law No. 1 of 1981 and ECL article 33 are inconsistent.

As a word of art relative to the legislative powers of local governments, "inconsistent" refers both to cases of express conflict between local and State law such as local prohibition of what State law permits (*Wholesale Laundry Bd. of Trade v City of New York, supra*) and to situations where statutory law evidences the State's intent to pre-empt local regulation (*People v De Jesus,* 54 NY2d 465, 469, *supra; People v Cook,* 34 NY2d 100; *Robin v Incorporated Vil. of Hempstead,* 30 NY2d 347; *Matter of Kress & Co. v Department of Health,* 283 NY 55). Where a State law indicates a purpose to occupy an entire field of regulation, local regulations are pre-empted regardless of whether their terms conflict with provisions of the State statute or only duplicate them (see *Consolidated Edison Co. v Town of Red Hook,* 60 NY2d 99; *People v De Jesus, supra; Robin v Incorporated Vil. of Hempstead, supra;* 6 [rev] McQuillin, Municipal Corporations [3d ed], § 21.34).

The intent to pre-empt may be deduced not only from express language providing for exclusivity, but also from

the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme (*Consolidated Edison Co. v Town of Red Hook, supra; People v De Jesus, supra; Robin v Incorporated Vil. of Hempstead, supra;* Note, Conflicts Between State Statutes and Municipal Ordinances, 72 Harv L Rev 737; Note, The Preemption Doctrine: Shifting Perspectives on Federalism and the Berger Court, 75 Col L Rev 623), including the need for State-wide uniformity in a given area (see, e.g., *Robin v Incorporated Vil. of Hempstead, supra* [regulation of abortion procedures]; *Wholesale Laundry Bd. of Trade v City of New York, supra* [minimum wage restrictions]).

ECL article 33 and its attendant regulations (6 NYCRR parts 325, 326) clearly evince the State's intention to preempt local regulation of pesticide use. Declaring that it recognizes the significance of the use of pesticides to the "welfare, health, economic well-being and productive and industrial capabilities of the people of this state" (ECL 33-0301), the Legislature has established a system of pesticide regulation which includes the designation of restricted use pesticides (see ECL 33-0303, subd 3, par d), and a scheme for the testing and certification of pesticide applicators. To effectuate the desired result and to insure uniformity, the legislation provides that "[j]urisdiction in all matters pertaining to the distribution, sale, use and transportation of pesticides, is by this article vested exclusively in the [C]ommissioner [of Environmental Conservation]" (ECL 33-0303, subd 1). Modeled after the Federal Insecticide, Fungicide and Rodenticide Act (US Code, tit 7, ch 6, subch II *et seq.*), ECL article 33 expressly asserts the need for uniformity by declaring that "it is desirable that there should be uniformity between the requirements of the several states and the federal government relating to pesticides" and by authorizing the commissioner to adopt regulations in conformity with agencies of the United States Government (ECL 33-0303, subd 4; 6 NYCRR 320.1). If the enhancement of national uniformity is a significant target of article 33, it would be a peculiar interpretation to view the statute as permitting New York's 62 counties, 929 towns, 556 villages and 62 cities (see NY St Legis Manual, 1980-1981, pp 956-1007) to adopt

their own regulatory schemes concerning the use of pesticides within their geographical limits.

If further evidence of the intent to pre-empt is needed it is provided by the complete and detailed nature of the State scheme. Comprehensiveness and detail are important in determining the existence of an intent to pre-empt (see, e.g., *Matter of Marcus v Baron,* 57 NY2d 862, *supra; People v De Jesus,* 54 NY2d 465, 469, *supra; Robin v Incorporated Vil. of Hempstead,* 30 NY2d 347, 350, *supra; Kindermann Fireproof Stor. Warehouses v City of New York,* 39 AD2d 266; *People v Kelsey,* 112 Misc 2d 927; *Hoetzer v County of Erie,* 497 F Supp 1207).

The views we express are not without significant precedential authority for in *Long Is. Pest Control Assn. v Town of Huntington* (72 Misc 2d 1031, affd 43 AD2d 1020) the Town of Huntington's effort to assert local control over pesticide use was struck down. Huntington had enacted an ordinance creating a pesticide control board, delegating to it the authority to register all pesticides intended for use or sale in the town and forbidding the sale or use of unregistered pesticides. The pesticide control board subsequently published lists of approved and nonapproved pesticides and denied registration to the nonapproved ones. In holding the ordinance invalid, the trial court concluded that article 33 had made it clear that its purpose was to occupy the entire field of pesticide regulation (72 Misc 2d 1031, 1033-1034, *supra*). We affirmed without opinion (43 AD2d 1020, *supra*). Attempting to distinguish the *Huntington* case, petitioners contend that the town's scheme was pre-empted because it duplicated that of the State while in the Laurel Hollow instance there is no conflict or duplication since article 33 is silent on the subject of aerial spraying. This effort to distinguish flies in the face of the fact that the decision voiding the Huntington ordinance declared that the "town code and the State law are not in harmony" (72 Misc 2d 1031, 1033, *supra*). Even if they had been harmonious, however, express conflict or duplication between State and local law is not a necessary predicate to a judicial finding that the Legislature intended to pre-empt local legislation (see *People v De Jesus, supra; Robin v Incorporated Vil. of Hempstead, supra*). Furthermore, there is no

foundation for the assertion that article 33 is silent on the subject of aerial spraying. The statute authorizes the commissioner to promulgate regulations to "prescribe methods to be used in the application of pesticides, including the time, place, manner and method of application and equipment used" (ECL 33-0303, subd 3, par e). Not only is aerial spraying a common method of applying pesticides, but the statute specifically defines the term "application of pesticide" to include any application by "aircraft or ground equipment" (ECL 33-0101, subd 7). It is pure sophistry to argue that because the State statute does not recite *in haec verba* that aerial spraying is permitted or prohibited it does not contemplate regulation of such a method of application.

Finally, petitioners seek to avoid the consequences of the statute's exclusivity language by arguing that only commercial use of pesticides is regulated by article 33. We find no support for that position in the statutory provisions. Article 33 vests exclusive jurisdiction in the commissioner relating to "all matters pertaining to the distribution, sale, use and transportation of pesticides" without restricting the jurisdiction solely to commercial users (see ECL 33-0303, subd 1). Consistent with that broad delegation of power, the commissioner is specifically authorized to "promulgate a list of restricted use pesticides and the usages of such pesticides that may be permitted subject to whatever conditions or limitations which the commissioner deems appropriate to fully protect the public interest" (ECL 33-0303, subd 3, par d). In exercising his powers, the commissioner has banned outright the use of certain pesticides and has designated other pesticides as "restricted". Restricted pesticides can only be used in conformity with labels registered with the Department of Environmental Conservation and only in the concentration levels described (6 NYCRR part 326). Of necessity, these restrictions or prohibitions of named pesticides apply to everyone in the State, whether engaged in commercial application or not, and regardless of whether the property treated is residential, commercial or industrial. In addition to the detailed plan for the issuance of commercial permits (ECL 33-0901), the commissioner's regulations have established a permit system for private individuals who seek to use

restricted pesticides on their own property (see 6 NYCRR 325.36 *et seq.*). Private applicators of restricted use pesticides must attend training programs and pass departmental examinations prior to being certified by the Department of Environmental Conservation. Clearly, then, the State regulatory scheme and the authority delegated to the commissioner to enforce it encompass use and application both by those whose business is pesticide application and private persons not engaged in the pesticide business. In any event, once the State carves out an area of regulation for itself, it is irrelevant that it decides to concentrate on one type of activity within the area or on a particular method of regulation (see *People v De Jesus,* 54 NY2d 465, 471, *supra).*

Our conclusion should be apparent. Since Local Law No. 1 of 1981 infringed on an area of regulation which was exclusive to the State, it was void from its inception. Therefore, the village trustees were entitled to repeal the void legislation without filing an environmental impact statement. The repeal did not constitute an action "which may have a significant effect on the environment" (see ECL 8-0109, subd 2) for all it did was correct the village records to expunge an unenforceable and void law. Since the appellate record does not provide a full background of the enactment of the legislation prohibiting aerial spraying, we are unable to comment on whether it was also void for failure to file an environmental impact statement.

Accordingly, the judgment appealed from should be reversed, on the law, the proceeding should be converted into an action for a declaratory judgment, it should be declared that Local Law No. 1 of 1982 of the Incorporated Village of Laurel Hollow is valid and the matter should otherwise be dismissed.

WEINSTEIN, J. (dissenting). We are herein called to pass upon the question of whether an enactment of the Board of Trustees of the Incorporated Village of Laurel Hollow (hereinafter the board) is null and void by reason of non-compliance with the provisions of the State Environmental Quality Review Act (SEQRA) (ECL art 8), and the regulations promulgated thereunder (6 NYCRR parts 325, 326). Necessarily subsumed in this analysis is the threshold

issue of whether each and every aspect of the field of pesticide control has been pre-empted by the Legislature's enactment of ECL article 33 and the power conferred by it upon the Commissioner of Environmental Conservation to make regulations concerning that subject. A finding of total pre-emption would mandate that local governments be entirely precluded from legislating in this broad area. In my view, the jurisdiction of the commissioner is not so pervasive.

The pertinent factual developments date back to 1981 with the board's enactment of Local Law No. 1 of 1981 of the Incorporated Village of Laurel Hollow, which provided as follows:

"Section 1. No person, firm or corporation shall spray, or cause to be sprayed or distributed, within the confines of the Incorporated Village of Laurel Hollow, any insecticide, herbicide, defoliant or other chemical from any aircraft, or any other contrivance now known, or hereafter invented or used for flight in the air.

"Section 2. Any person violating any provision of this Local Law shall, upon conviction, be punishable by a fine not to exceed Two Hundred and Fifty Dollars ($250.00) and, in addition thereto, such violation shall constitute and is hereby declared to be disorderly conduct, and any person violating the same shall be and is hereby declared to be a disorderly person.

"Section 3. This Local Law shall take effect immediately."

On April 26, 1982, the board, upon duly published notice, convened a public hearing in order to consider the feasibility of adopting Local Law No. 1 of 1982, the effect of which would be to immediately repeal the ban against aerial spraying in the village. Petitioners, who constitute a group of property owners and taxpayers of the Incorporated Village of Laurel Hollow, opposed such a repeal in view of the alleged intent of certain residents to combat a gypsy moth infestation in the village by aerial spraying of the chemical insecticide carbaryl. Carbaryl is sold under the trade name of "Sevin". Petitioners maintained that there exist other effective methods of controlling the gypsy moth problem,

which methods are less deleterious to the ecology of the community than is the aerial spraying of Sevin.

After extensive public debate, the board, by a 4 to 3 vote, enacted the repealing ordinance. Shortly after the adoption of Local Law No. 1 of 1982, petitioners commenced a CPLR article 78 proceeding to declare null and void the board's repeal of Local Law No. 1 of 1981. Petitioners contended that the board ignored the mandatory provisions of SEQRA by failing to accord the required consideration to "the effect which a proposed action is likely to have on the environment", to the ways in which to "minimize or avoid adverse environmental effects" and to the "alternatives to the proposed action" (ECL 8-0109, subds 1, 2).

In opposition thereto, the board asserted that the repealing ordinance was not within the ambit of SEQRA, and that moreover, Local Law No. 1 of 1981 was void in that it came into direct conflict with ECL article 33, which allegedly pre-empted the entire field of pesticide regulation.

Upon petitioners' application, Special Term found Local Law No. 1 of 1982 invalid inasmuch as the board had failed to comply with the requirements of SEQRA prior to the enactment thereof. The repeal of the 1981 prohibition against aerial spraying was deemed to represent a change in policy, thus constituting an action within the meaning of ECL 8-0105 (subd 4, par [ii]). Special Term specifically rejected the argument that the entire field of pesticide regulation had been pre-empted by the State, stating: "While the state had preempted the field of regulation of the use of pesticides, Local Law No. 1-1981 banning aerial spraying of 'any insecticide, herbicide, defoliant or any other chemical', in the opinion of the Court, is not inconsistent or in conflict with [ECL] Article 33. The Village, by Local Law No. 1-1981, did not impose any conflicting or inconsistent requirements for the aerial spraying of chemicals including insecticides. Nor is this a case where the Village banned such use where the state had specifically authorized its use. Where such use is regulated by the state the Village may not interfere with the Commissioner's jurisdiction in governing the use of pesticides. However, the Village was empowered under the Municipal Home

Rule Law to ban aerial spraying for the safety, health and well-being of its residents or their property."

Accordingly, a judgment was entered declaring Local Law No. 1 of 1982 invalid and remitting the matter to the board for further proceedings in compliance with the provisions of SEQRA. The board has appealed therefrom.

Essentially, the matter before us calls for a determination of whether a local law pertaining to the aerial spraying of chemicals used to combat gypsy moth infestation runs afoul of ECL article 33. Inasmuch as it has been consistently held that a CPLR article 78 proceeding may not be utilized as a device by which to test the constitutionality of legislative enactments, I agree with the majority that the petition should be treated as an action for a declaratory judgment so that we may dispose of this proceeding on its merits (CPLR 103, subd [c]; *Matter of Kovarsky v Housing & Dev. Admin.*, 31 NY2d 184, 191-192; *Matter of Lakeland Water Dist. v Onondaga County Water Auth.*, 24 NY2d 400, 407; *Matter of Sherman v Frazier*, 84 AD2d 401, 405).

ECL 33-0303 (subd 1) vests the Commissioner of Environmental Conservation with exclusive "[j]urisdiction in all matters pertaining to the distribution, sale, use and transportation of pesticides".* The commissioner is empowered to adopt rules and regulations which "prescribe methods to be used in the application of pesticides, including the time, place, manner and method of application and equipment used, and may restrict or prohibit use of materials in designated areas during specified periods of time, and shall encompass all reasonable factors which he deems necessary to prevent damage or injury to health, property and wildlife" (ECL 33-0303, subd 3, par e).

The declaration of policy and purposes underlying this article regarding the use of pesticides has been set forth in ECL 33-0301 as follows: "The purpose of this article is to regulate the registration, commercial use, purchase and custom application of pesticides. Pesticides, properly used

---

* "Pesticide" is a generic term which includes "[a]ny substance or mixture or substances intended for preventing, destroying, repelling, or mitigating any pest". A "pest", in turn, is defined to include "any insect" (ECL 33-0101, subd 32, par a; subd 31, par [1]). The insecticide carbaryl is clearly within the ambit of the term "pesticide".

for the control of insects, fungi, weeds and nematodes, and as defoliants, desiccants, and plant regulators and for related purposes, are valuable, important and necessary to the welfare, health, economic well-being and productive and industrial capabilities of the people of this state. However, such materials, if improperly used, may injure health, property and wildlife. It is hereby declared to be a matter of legislative determination that the regulation of the registration, commercial use, purchase and custom application of pesticides is needed in the public interest and that in the exercise of the police power all persons be required to register or obtain permits before engaging in such activities".

From the statutory declaration of policy and purposes it is apparent that the aspect of pesticide regulation which the State has pre-empted pertains to the requirement that all persons be required to register or obtain permits before using pesticides.

Among the general powers of a village board of trustees is the ability to: "take all measures and do all acts, by local law, not inconsistent with the provisions of the constitution, and not inconsistent with a general law except as authorized by the municipal home rule law, which shall be deemed expedient or desirable for the good government of the village, its management and business, the protection of its property, the safety, health, comfort, and general welfare of its inhabitants, the protection of their property, the preservation of peace and good order, the suppression of vice, the benefits of trade, and the preservation and protection of public works" (Village Law, § 4-412, subd 1). The village board of trustees, as a unit of local government, is also empowered to adopt local laws relating to "[t]he government, protection, order, conduct, safety, health and well-being of persons or property" within its boundaries, provided that such laws are consistent with the State Constitution or any general law (Municipal Home Rule Law, § 10, subd 1, pars [i], [ii], cl a, subcl [12]).

Neither the Environmental Conservation Law nor the regulations of the commissioner specifically authorizes or prohibits aerial spraying of pesticides. Insofar as the commissioner has not explicitly authorized the aerial spraying

of pesticides, the local law precluding same did not directly contravene existing State policy. We are, therefore, not confronted with a situation whereby a municipality is endeavoring to appear more stringent than the State by proscribing some activity which the latter has condoned. On the contrary, Local Law No. 1 of 1981 constituted a reasonable exercise of municipal police power. While the State has clearly pre-empted the licensing aspect of pesticide regulation, the board has not, in this instance, impinged upon the commissioner's jurisdiction nor has it arrogated unto itself any powers which it does not legitimately possess.

The following language from *People v Cook* (34 NY2d 100, 109) is pertinent to the instant situation: "[It is argued] that a locality may not 'enact a local law which prohibits conduct which is permitted by State law.' This statement of the law is much too broad. If this were the rule, the power of local governments to regulate would be illusory. Any time that the State law is silent on a subject, the likelihood is that a local law regulating that subject will prohibit something permitted elsewhere in the State. That is the essence of home rule".

The following opinion of the Attorney-General is somewhat illustrative of the distinction between what constitutes legitimate home rule as opposed to an improper infringement upon the State's exclusive jurisdiction:

"This is in response to your letter of January 17, 1978, in which you request my opinion 'as to whether or not Section 33-0303.1 of the Environmental Conservation Law supersedes pesticide regulatory programs currently being conducted by the Onondaga County Health Department'.

"Section 33-0303(1) of the Environmental Conservation Law expressly vests jurisdiction in all matters pertaining to the use of pesticides 'exclusively in the commissioner' of Environmental Conservation. Section 33-0905(1) of the Environmental Conservation Law (Custom applicator certification) requires that all persons who engage in custom application of pesticides (defined as 'any application of pesticides by aircraft or ground equipment' [ECL 33-0101(6)] must secure a custom applicator certificate issued by the Commissioner of Environmental Conservation.

"Pursuant to the provisions of § 33-0303(3)(e) of the Environmental Conservation Law, the Commissioner of Environmental Conservation has duly adopted comprehensive rules and regulations regarding the certification and standards for licensing of commercial applicators of pesticides, which rules are published in Volume 6, Part 325 of the Official Compilation of Codes, Rules and Regulations of the State of New York. The rules and regulations adopted by the Commissioner of Environmental Conservation include, *inter alia:* a requirement that an individual engaged in the commercial application of pesticides shall possess a valid commercial applicator certificate issued by the Commissioner (6 NYCRR 325.17); a requirement that a commercial applicator pass a written examination prior to certification as such (6 NYCRR 325.18[a]), which examination is to be conducted by the Department of Environmental Conservation (6 NYCRR 325.21); the eligibility requirements for an individual to take the examination for a commercial applicator certificate (6 NYCRR 325.19); and provisions for the certification, renewal and recertification of commercial pesticide applicators (6 NYCRR 325.22). The rules and regulations also include provisions for the issuance of private applicator certificates. 6 NYCRR 327.37-44.

"The aforesaid rules and regulations when read together with Article 33 of the Environmental Conservation Law, constitute a complete and comprehensive legislative plan for State licensing and regulation of commercial applicators of pesticides throughout the State of New York. The law is clear that where there is a complete and comprehensive legislative scheme for State control and regulation, regulation by local authorities is precluded and, there being no room for local regulation, any local ordinance attempting to impose additional regulation in the same field must be held to be invalid. *Matter of Kress & Co.* v. *Dept. of Health,* 283 N.Y. 55 (1940).

"It is clear from a reading of the provisions of the Onondaga County Sanitary Code that such provisions essentially duplicate the State licensing requirements for persons who seek to engage in the business of pest control in Onondaga County.

"That the Legislature intended that Article 33 of the Environmental Conservation Law occupy the entire field of pesticide control, that the Commissioner's jurisdiction over the use of pesticides is exclusive, and that the provisions of Environmental Conservation Law, Article 33 preempt the field of pesticide use and control, thus barring local regulation of the use of pesticides, has been expressly held in *L. I. Pest Control* v. *Tn. of Huntington,* 72 Misc 2d 1031 (Sup. Ct., Suffolk Co., 1973), aff'd, no opinion, 43 AD2d 1021 (2nd Dept., 1974).

"I, therefore, conclude that those provisions of the Onondaga County Sanitary Code which impose licensing requirements for pesticide applicators in the County of Onondaga are invalid as such provisions constitute an attempt by a local governing body to regulate the use of pesticides, which field of regulation has been preempted by the State" (1978 Opns Atty Gen 44, 45-46).

At bar, we are not dealing with a local ordinance which essentially duplicates pre-existing State licensing requirements. Indeed, the board in the instant case has imposed no licensing requirements at all. Unlike the situation in *Long Is. Pest Control Assn. v Town of Huntington* (72 Misc 2d 1031, affd 43 AD2d 1020), wherein the Town of Huntington established a pesticides control board to *register* all pesticides intended for sale or use in the town and set up lists of those pesticides approved for general or restricted use, the Village of Laurel Hollow never addressed the area of pesticide registration, which area has been specifically pre-empted by the State. On the contrary, the board addressed an area on which the State Legislature and the department's rules and regulations are not explicit. No affirmative action was herein contemplated by the board in enacting Local Law No. 1 of 1981. While all facets of the registration and application of pesticides are subject to State regulation, the decision to ban aerial spraying of a certain category of pesticide for reasons of public health, where the use of such substance has not been expressly ordered by the commissioner, is best left to the discretion of local authorities. On this basis, I strongly disagree with the majority's implication that petitioners' argument to this effect is without foundation or that it amounts to "pure sophistry".

As succinctly stated by former Justice Hopkins in his dissenting opinion in *Matter of Marcus v Baron* (84 AD2d 118, 137-139, revd for reasons stated in dissenting opn at App Div 57 NY2d 862): "When State-wide interests have been regulated by a general law, a local government may not interfere with its operative effect by a local law * * * The Legislature, indeed, reflects the overriding concerns of the people of the State, and its judgment must ultimately resolve the conflicts between municipal segments of the State, rather than to permit a kind of internecine struggle between them".

In my view, the conclusion reached in this dissent in no way contravenes that fundamental tenet. The subject matter of the local law in question, i.e., the aerial spraying of any insecticide, herbicide, defoliant or other chemical within the confines of the Incorporated Village of Laurel Hollow, is not of such nature as to mandate State-wide uniformity. This case is distinguishable from those decisions involving situations wherein the State has indicated a compelling interest in occupying the entire field of regulation (see *Consolidated Edison Co. v Town of Red Hook*, 60 NY2d 99, involving licensing requirements concerning the siting of major power plants; *People v De Jesus*, 54 NY2d 465, involving the regulation of establishments which sell alcoholic beverages, specifically in the context of "after hours" clubs; *Robin v Incorporated Vil. of Hempstead*, 30 NY2d 347, involving the subject of abortion legislation; *Matter of Kress & Co. v Department of Health*, 283 NY 55, involving State-wide sanitary regulations pertaining to the manufacture and distribution of frozen desserts; *Wholesale Laundry Bd. of Trade v City of New York*, 18 AD2d 968, affd 12 NY2d 998 upon opn at App Div at 17 AD2d 327, involving State regulation of a minimum wage law). The nature of the subject matter being regulated herein differs from the afore-mentioned situations in which the State had a compelling interest in regulating the siting of major power facilities, in fostering and promoting temperance and in safeguarding the public health and general economic welfare. Inasmuch as the various regions of this State may experience different problems with respect to pest control and since such problems are best

known by local governments, there is less need for a unified State-wide system of regulation in the instant case. Accordingly, I concur with the conclusion of Special Term that the board was empowered, under the Municipal Home Rule Law, to ban aerial spraying, with the safety, health and well-being of its own residents and their property in mind.

The purpose of an environmental impact statement is to serve as an "alarm bell", so as to alert responsible public officials to accord weight to environmental factors and to inform them concerning significant environmental changes before they have reached ecological points of no return (*Webster Assoc. v Town of Webster,* 85 AD2d 882, 884, app dsmd 56 NY2d 644, mot for lv to app granted 57 NY2d 606). There exists a relatively low threshold for requiring an environmental impact statement in view of the expansive reading which should be given to SEQRA to assure that it be administered by local governments to the fullest extent possible (ECL 8-0103, subd 6; 8-0109, subd 2; *Matter of Rye Town/King Civic Assn. v Town of Rye,* 82 AD2d 474, apps dsmd 55 NY2d 747, mot for lv to app dsmd 56 NY2d 985; *Onondaga Landfill Systems v Flacke,* 81 AD2d 1022).

In a factually related case, a village's mosquito control program, which involved the aerial spraying of pesticides, was held to be subject to the requirements of SEQRA. As a result, the village was enjoined from conducting further aerial spraying pending its compliance with the act, i.e., performing an environmental impact study and preparing a statement (*Matter of Marino v Platt,* 104 Misc 2d 386).

In the instant situation, the board's repeal of its prohibition against aerial spraying clearly represents a change in existing policy and, as such, constitutes an action within the meaning of ECL 8-0105 (subd 4, par [ii]). Consequently, the board is charged with the responsibility of preparing or causing to be prepared an environmental impact statement (ECL 8-0109, subd 2). Its failure to have complied with the applicable regulations necessitates that the matter of the enactment of Local Law No. 1 of 1982 be remitted to the board for further proceedings in compliance therewith.

As my learned colleagues of the majority aptly note, the record on appeal does not adequately detail the background of the enactment of the 1981 local legislation which imposed the ban on the aerial spraying of pesticides. The question of whether an environmental impact statement should have been required prior to the enactment of Local Law No. 1 of 1981 is thus not properly before us. I note merely that such an impact statement is required prior to a proposal which may have a significant effect on the environment (ECL 8-0109, subd 2). Since a ban on the aerial spraying of pesticides, being prohibitive rather than affirmative in nature, cannot possibly have an adverse impact on the environment, the absence of an environmental impact statement in these particular circumstances, was, in my opinion, in no way prejudicial.

Accordingly, I vote to affirm.

GIBBONS and GULOTTA, JJ., concur with LAZER, J. P.; WEINSTEIN, J., dissents and votes to affirm the judgment with an opinion in which RUBIN, J., concurs.

Judgment reversed, on the law, with costs, proceeding converted into an action for a declaratory judgment, it is declared that Local Law No. 1 of 1982 of the Incorporated Village of Laurel Hollow is valid, and the matter is otherwise dismissed.