Thomas P. Halley, Esq. Assistant Corporation Counsel, Poughkeepsie
You have asked whether a proposed local regulation requiring one in possession of a dog to be legally responsible for cleaning up after the animal has been preempted by the State.
The Legislature has enacted Public Health Law, § 1310
entitled "Removal of canine wastes in cities with a population of four hundred thousand or more persons and in the City of Yonkers". The law requires dog owners in cities of 400,000 or more persons and in the City of Yonkers "* * * to remove any feces left by his dog on any sidewalk, gutter, street or other public area" (§ 1310).
A city, such as Poughkeepsie, is not covered by section 1310 because its population is less than 400,000 people. However, the city does have the power to enact a regulation requiring the cleaning up of canine droppings.
New York Constitution, Article IX, § 2(c)(ii)(10) and Municipal Home Rule Law, § 10(1)(ii)(a)(12) authorize a local government to adopt and amend local laws, not inconsistent with the provisions of the Constitution or with any general law, relating to the government, protection, order, conduct, safety, health and well-being of persons or property therein. We believe that a canine waste regulation is a public health measure clearly within the grant of the police power to local governments.
It is our opinion that a local regulation controlling canine waste would be consistent with section 1310. The constitutionality of Public Health Law, § 1310 has been upheld in Schnapp v Lefkowitz,101 Misc.2d 1075 (Sup Ct, Spec Term, New York Co, 1979). In addition to listing health problems caused by canine waste (such as bacterial and larval infections being spread to humans and other dogs), the Court explained the reasoning behind regulating cities with populations in excess of 400,000.
 "Density of population creates distinct and unique problems, and a classification of cities to which a law will be applicable will be upheld if there is a reasonable basis for such classification. Certainly, a problem which is not even noticeable when there is one dog per square mile is accentuated, and calls for action when the canine population approaches 2,000 per square mile" (Schnapp v Lefkowitz, supra, at 1081).
Clearly, the purpose of section 1310 is to regulate canine wastes in cities of dense population. Section 1310 does not expressly state an intent to occupy the entire field (Wholesale Laundry Bd. v City of N.Y.,17 A.D.2d 327, 330 [1962], affd 12 N.Y.2d 998 [1963]). Nor does the State law regulate in such detail as to be demonstrative of an intent to preempt the field of canine waste regulation (People v DeJesus [Luis],54 N.Y.2d 465, 469 [1981]). Indeed, section 1310 simply mandates in a few areas of the State that it is "* * * the duty of each dog owner to remove any feces left by his dog on any sidewalk, gutter, street or other public area".
In mandating the regulation of canine waste in heavily populated areas, we see no basis for concluding that section 1310 precludes local regulations in other municipalities. Local regulations controlling canine waste are consistent with section 1310's purpose of reducing health hazards associated with dog waste. Further, silence by a State statute is not to be construed as precluding local regulation since such a construction would make illusory the power of local governments to regulate.
 "Any time that the State law is silent on a subject, the likelihood is that a local law regulating that subject will prohibit something permitted elsewhere in the State. That is the essence of home rule. A different situation is presented when the State has acted upon a subject, and in so acting has evidenced a desire that its regulation should preempt the possibility of varying local regulations" (People v Cook, 34 N.Y.2d 100, 109 [1974]).
We conclude that the City of Poughkeepsie may employ its police power to enact a regulation requiring anyone in possession of a dog to be legally responsible for cleaning up after the animal.