OPINION OF THE COURT
Edward H. Lehner, J.
The principal issue raised on the motions before the court is whether it is illegal for the New York City Health and Hospitals Corporation (HHC) to contract with a private entity to provide supplementary emergency ambulance service.
On August 21, 1988 HHC entered into a contract with Metropolitan Ambulance Company (Metropolitan), a certified ambulance service as defined in section 3001 of the Public Health Law, to provide backup emergency ambulance service to the HHC Emergency Medical Service (EMS).
The contract provides that when no EMS unit is available to respond to a request for medical assistance, EMS may telephone Metropolitan to request the dispatch of an ambulance, and Metropolitan agrees that it will dispatch an ambulance and crew if available and provide appropriate emergency treatment and transport the patient to a hospital. There is no charge to HHC or the city for the service and "there will be no charge by Metropolitan to any patient transported who is without some form of third party reimbursement coverage”, and "Metropolitan shall accept as payment in full whatever monies are provided from third-party reimbursers from patients who have such coverage”.
The union petitioners seek a declaration that the contracting out of this service is illegal, and seek to enjoin the *656 implementation of the contract. Respondents cross-move to dismiss.
Petitioners contend that the contract will impact on the terms and conditions of employment of EMS personnel represented in collective bargaining by petitioner District Council 37. In connection therewith, a petition was filed with the New York City Office of Collective Bargaining (OCB) on September 20, 1988 charging respondents with a violation of the New York City Collective Bargaining Law by failing to bargain with the union over the decision to contract with Metropolitan, and such charge is currently pending before the OCB.
Respondents assert that EMS averages over 15,000 emergency calls for assistance every week and "presently fields 428 ambulance tours a day” (a tour being a shift an ambulance crew works), and that prior to entering into the contract, EMS would contact a voluntary ambulance service to handle calls that its personnel were unable to service. Respondents state that the "availability of this back-up provider system is not intended to decrease either the number of present employees or number of EMS units on the street, nor will it alter any current plans to increase or replenish the EMS work force.”
Petitioners acknowledge that the OCB has exclusive jurisdiction to initially determine whether respondents committed an improper labor practice, and since the administrative proceeding is still pending, do not request a ruling from the court as to whether such a practice was committed. However, petitioners do seek to stay implementation of the contract pending a determination of this issue by the administrative body.
Petitioners urge a stay on the additional ground that the HHC action in entering into the Metropolitan contract is illegal as not authorized by subdivision (9) of section 5 of the New York City Health and Hospitals Corporation Act (the Act) (McKinney’s Uncons Laws of NY § 7385 [9]; L 1969, ch 1016, § 1, as amended), which empowers HHC to "provide, maintain and operate an ambulance service to bring patients to or remove them from any health facility of’ HHC. Petitioners argue that this statute puts HHC "under mandate to provide, maintain and operate its own ambulance service”, and that providing private ambulance service to supplement the EMS is "ultra vires”. In support of this contention, petitioners note that whereas subdivision (8) of said section authorizes HHC "[t]o provide health and medical services for the *657 public directly or by agreement or lease with any person, firm or private or public corporation”, subdivision (9) does not mention contracting with private entities for the rendering of ambulance services. Such omission, petitioners maintain, demonstrates a legislative intent to prohibit HHC from contracting with any private entity for the delivery of ambulance services.
The simple answer to this argument is that the authorization in subdivision (8) for contracting out refers to "health and medical services”, which is defined in subdivision (13) of section 3 of the Act (McKinney’s Uncons Laws of NY § 7383 [13]; L 1969, ch 1016, § 1, as amended) to specifically include "ambulance service”. Combining this definition with subdivision (5) of section 5 of the Act, which authorizes HHC to "make and to execute contracts and leases and all other agreements or instruments necessary or convenient for the exercise of its powers and the fulfillment of its corporate purposes” (McKinney’s Uncons Laws of NY § 7385 [5]; L 1969, ch 1016, § 1, as amended), establishes that in addition to being authorized to maintain its own ambulance service, it is within the powers of HHC to also make arrangements with private entities to provide emergency supplementary service.
Petitioners further argue that in entering into the contract, HHC violated section 6 of article V of our State Constitution, which requires that appointments and promotions in the civil service be made on merit determined by competitive examination.
However, the "Constitution does not require that all governmental services be supplied by civil service employees, and contracts with private contractors have been permitted when they were legitimate attempts to have service provided in a more cost-efficient manner * * *. [But] [w]here the private contracting party’s employees are not independent of the government but are controlled and supervised by government officials, the contract will be struck down” (Matter of Nassau Educ. Ch. of Civ. Serv. Employees Assn. v Great Neck Union Free School Dist., 85 AD2d 733 [2d Dept 1981], affd 57 NY2d 658 [1982]; see also, Matter of Conlin v Aiello, 64 AD2d 921 [2d Dept 1978], affd 49 NY2d 713 [1980]).
In Coxen v Meyer (130 AD2d 72 [2d Dept 1987]), the court summarized the factors to be considered in determining whether a contract for the provision of services by the private sector to government violates the aforesaid constitutional *658 provision, stating (at 76): "(1) the agency may not fix salaries, although it may require certain minimum wages, (2) the agency may not fix the hours of employment of individual employees, (3) the agency may not control the terms and conditions of employment although it may, and should, detail the services that must be performed and the frequency of performance, (4) the agency may not control the hiring practices of the contractor, although it may require the hiring of licensed persons where necessary and that there be affirmative action in hiring minorities, (5) the contractor must supply his own supervision, and (6) the contractor must be responsible for the payment of all pension and welfare benefits, taxes and insurance pertaining to its employees.”
The contract herein conforms to all of these requirements, and thus is not violative of the State Constitution.
Finally, although there is not now before the court the issue of whether the action of respondents constitutes an unfair labor practice, the court may well have discretion to stay implementation of the contract if rights would be irreparably lost pending an administrative determination. But here no irreparable harm has been demonstrated. Further, to grant such a stay would result in the public being deprived of this supplemental emergency service pending the resolution of the labor dispute. Since, " '[i]n ruling on a motion for a preliminary injunction, the courts must weigh the interests of the general public as well as the interests of the parties to the litigation’ ” (De Pina v Educational Testing Serv., 31 AD2d 744, 745 [2d Dept 1969]), it would clearly be inappropriate herein to grant petitioners the requested relief.
In light of the foregoing, petitioners’ applications are denied, and the cross motion to dismiss is granted.