[752 NYS2d 665]

NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, Appellant, and CITY OF NEW YORK, Intervenor-Appellant, v COUNCIL OF THE CITY OF NEW YORK, Respondent, and CITY EMPLOYEES UNION LOCAL 237, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL-CIO, Intervenor-Respondent.

First Department, January 14, 2003

---

APPEARANCES OF COUNSEL

*Peter F. Nadel* of counsel, New York City (*David A. Florman* and *Catherine G. Patsos* on the brief; *Katten Muchin Zavis Rosenman* and *Alan D. Aviles*, attorneys), for appellant.

*George Gutwirth* of counsel, New York City (*Francis F. Caputo* on the brief (*Michael A. Cardozo, Corporation Counsel* of New York City, attorney), for intervenor-appellant.

*Thomas L. McMahon* of counsel, New York City (*Janet Ford* and *David Szuchman* on the brief; *Thomas L. McMahon, General Counsel*, attorney), for respondent.

*James L. Linsey* of counsel, New York City (*Cohen, Weiss & Simon LLP*, attorneys), for intervenor-respondent.

## OPINION OF THE COURT

ANDRIAS, J.P.

This appeal presents the question of whether Local Law No. 16 (2001) of the City of New York, which mandates that plaintiff New York City Health and Hospitals Corporation (HHC) utilize "peace officers" appointed pursuant to Criminal Procedure Law § 2.10 (40) as security guards, is a valid exercise of the City Council's police powers or an unconstitutional interference with HHC's right, as established by the New York City Health and Hospitals Corporation Act (McKinney's Uncons Laws of NY § 7381 *et seq.* [L 1969, ch 1016, § 1, as amended; Health and Hospitals Act]), to operate autonomously. For the following reasons, we find and declare that the local law is invalid in that it unconstitutionally conflicts with and is preempted by the Health and Hospitals Act.

HHC employs unarmed security guards who are represented by City Employees Union Local 237 and who have "peace officer" status under CPL 2.10 (40), which requires them to successfully complete a training program and grants them, inter alia, the power to make warrantless searches and arrests, use physical force when necessary and issue summonses (CPL 2.20,

2.30). In 1995, HHC contracted to redeploy the Local 237 guards at its headquarters and replace them with private security guards. In *Matter of Haynes v Giuliani* (238 AD2d 257), this Court rejected Local 237's claim that HHC had violated the City's procedural rules for outsourcing, holding that HHC was an entity separate and distinct from the City with complete autonomy respecting its personnel and, accordingly, should not be deemed an "agency" within the meaning of regulating the privatization of services performed by City employees.

Projecting that it could save $60 million over five years which could be better spent on patient care, HHC then decided to expand its outsourcing and replace about 850 Local 237 security guards with private guards who did not have peace officer status. In turn, Local 237 sought relief from the City Council in the form of legislation mandating that HHC continue to employ security personnel with peace officer status.

On March 28, 2001, the City Council, maintaining that it was in the interest of the safety of patients, staff and visitors to HHC facilities, passed Local Law 16, over the veto of the Mayor, to amend chapter 1 of title 17 of the Administrative Code of the City of New York by adding a new section 17-182 to read as follows:

> "§ 17-182 City-funded public hospitals and health facilities required to utilize peace officers.
>
> "a. Any corporation of government, the expenses of which are paid in whole or in part from the city treasury, which provides health and medical services and operates health facilities and which is authorized to employ special officers having peace officer status as defined in New York Criminal Procedure Law § 2.10 (40), shall utilize peace officers appointed pursuant to said subdivision to perform the duties of special officer, senior special officer and hospital security officer. The commissioner of the department of health shall enforce this requirement.
>
> "b. Any person, including but not limited to any labor organization, claiming to be aggrieved by a violation of subdivision a of this section shall have a cause of action in any court of competent jurisdiction for damages, including punitive damages, and for injunctive relief and such other remedies as may be appropriate."

Believing the new law, which was effective immediately, barred it from making its own determination of the qualifications for security officers, contracting with third parties for the provision of security personnel who do not qualify as "peace officers" under CPL 2.10 (40), or utilizing peace officers employed by third parties, HHC commenced this action against the City Council seeking to declare Local Law 16 invalid on the ground it conflicts with and is preempted by the Health and Hospitals Act. The City intervened as a plaintiff and Local 237 intervened as a defendant.[1] Both sides moved for summary judgment.

In a decision and order dated April 4, 2002, the Supreme Court (Alice Schlesinger, J.) declared Local Law 16 to be lawful and valid and directed HHC and the City to comply with its mandates.

Citing, among other things, a 1980 statement of HHC's then president in support of state peace officer training for its security guards, HHC's failure to challenge Local Law No. 10 (1986) of the City of New York, which, in the interest of public safety, required that *all* hospitals in the City provide translators for their emergency rooms when non-English speaking residents comprise at least 10% of the patient population of a particular hospital's service area, and the continuing role that the City plays in HHC operations, the court rejected plaintiffs' conflict and preemption arguments, opining that Local Law 16 merely bars a "major change" as to HHC's security personnel qualifications and was not inconsistent with the Health and Hospitals Act because:

> "There is nothing in the Local Law that prohibits what the State [Health and Hospitals] Act permits or permits what the State [Health and Hospitals Act] prohibits. While it is true that the Law requires HHC to adhere to certain minimum standards in its hiring of security guards, those meeting the qualifications and receiving the training of peace officers as defined in Article 2 of the New York Criminal Procedure Law, the Law merely continues the status quo as to these[ ] employees."

---

**1.** After HHC commenced this action, Local 237 sought parallel relief from the State Legislature in the form of legislation which would have limited HHC's power to set personnel qualifications free of City control (2001 NY Senate-Assembly Bill S 4413, A 8433). This effort failed due to the Governor's veto.

The court then accepted the City Council's argument that Local Law 16 was a proper exercise of its power to enact legislation pertaining to the "government, protection, order, conduct, safety, health and well-being of persons or property therein" under New York Municipal Home Rule Law § 10 (1) (ii) (a) (12) and section 28 (a) of the New York City Charter.[2] Noting the breadth of HHC's operations, the level of crime that existed at its facilities despite the use of guards with peace officer status, and the City Council's finding that non-peace officer guards would have far less training and would lack the authority to make arrests or use physical force when needed, the court explained: "With the above as constituting some of the findings made, the [City] Council overwhelmingly passed Local Law twice with the expressed purpose of protecting both the public safety and the funds and property appropriated to implement HHC's mission."

While noting that cases such as *Brennan v City of New York* (59 NY2d 791, 792), *Bender v New York City Health & Hosps. Corp.* (38 NY2d 662), *Matter of Haynes v Giuliani (supra)*, and *Vaughn v City of New York* (108 Misc 2d 994, 998) broadly stated the independence of HHC from City regulation, the court distinguished them by opining that "each one concerns itself with somewhat narrow issues, unlike the one presenting itself here which at its root concerns the City Council's ability to promulgate legislation for the protection of citizens who utilize the public hospital system." Particularly, the court found that *Haynes* "stands for the narrow holding that HHC's participation in Collective Bargaining did not otherwise bind it to the dictates of Local Law 35."

Relying instead on *Matter of Levy v City Commn. on Human Rights* (85 NY2d 740), *Matter of Maloff v City Commn. on Human Rights* (38 NY2d 329) and *Huerta v New York City Tr. Auth.* (290 AD2d 33, *appeal dismissed* 98 NY2d 643), which deal with "situations involving the enforcement of general laws and regulations involving discrimination and safety vis-à-vis independent corporations and agencies" and "stand for the proposition that unless there is an obvious or explicit inconsistency with a State provision, an agency should adhere to legitimate concerns which find their way into local laws," the court concluded:

---

**2.** Section 28 (a) vests in the City Council the "power to adopt local laws which it deems appropriate * * * for the good rule and government of the city; for the order, protection and government of persons and property; for the preservation of the public health, comfort, peace and prosperity of the city and its inhabitants."

"That I find is the situation here. The City Council, responsible in large part for the budget of the City, a major part of which supports HHC, as well as responsible for enacting laws regarding public safety[,] had the power to inquire into a major change in the security situation in the public hospitals. This was a change HHC was considering in a legitimate attempt at saving funds to allocate them for other purposes. Once the City Council investigated and made its findings, I find it had the power to pass this law, which like its predecessor, Local Law 10, provided for employees to be hired by the public hospitals equipped with specialized training and qualifications."

Plaintiffs appeal from this determination.

The home rule provisions of New York State Constitution, article IX, § 2 (c), Municipal Home Rule Law § 10, and section 28 of the New York City Charter confer broad police power on the City Council relating to the public welfare (*see People v De Jesus*, 54 NY2d 465, 468). Nevertheless, the City Council may not exercise its *police power* to adopt a law: (1) which is inconsistent with a state statute (*see e.g. Consolidated Edison Co. of N.Y. v Town of Red Hook*, 60 NY2d 99, 107); or (2) in a field where the Legislature has restricted such an exercise by preempting the area of regulation by assuming full regulatory responsibility (*see e.g. New York State Club Assn. v City of New York*, 69 NY2d 211, 217, *affd* 487 US 1; *see also DJL Rest. Corp. v City of New York*, 96 NY2d 91; *Matter of Lansdown Entertainment Corp. v New York City Dept. of Consumer Affairs*, 74 NY2d 761, 763-764; *People v Cook*, 34 NY2d 100, 105-106).

A narrow exception exists where the local law (1) only "incidentally touches on the regulation" or has only a "tangential" impact on the body's power or functions or state legislative objective *and* (2) is a law of "general application" (*see Matter of Landsdown Entertainment Corp. v New York City Dept. of Consumer Affairs,* 141 AD2d 472, *affd* 74 NY2d 761, *supra*; *Maloff v City Commn on Human Rights*, *supra* at 332; *Levy v City Commn. on Human Rights*, *supra* at 745; *Huerta v New York City Tr. Auth.*, *supra* at 39).

Based on the foregoing, the questions before this Court are: (1) whether Local Law 16 is inconsistent with the provisions of the Health and Hospitals Act; (2) whether the State has demonstrated an intent to preempt the entire field and thereby preclude any further local regulation; and (3) whether Local

Law 16 falls within the narrow exception to the general rule (*see Consolidated Edison Co. of N.Y. v Town of Red Hook, supra*).

Plaintiffs argue that Local Law 16 is inconsistent with and preempted by the Health and Hospitals Act. The City Council counters that Local Law 16 is entitled to a strong presumption of validity and is not inconsistent with the Health and Hospitals Act or preempted thereby because it is a valid exercise of its police power from which HHC is not immune. Maintaining that plaintiffs mischaracterize the law as a personnel measure, when it is in fact a safety measure that prohibits HHC from outsourcing its security force, the City Council argues that the Health and Hospitals Act never intended to completely separate the City from its hospitals and that HHC's autonomy is limited to the area of the adequacy and delivery of health care (*see Council of City of N.Y. v Giuliani*, 93 NY2d 60). Once outside that area, such as in matters involving public safety, the City Council claims it retains an active role. In support of its argument, the City Council points to HHC's failure to challenge Local Law 10 of 1986 (translators in emergency rooms) and Local Law No. 44 (1992) of the City of New York (including HHC in the City's "Vendor" system), and various sections of the Health and Hospitals Act that evidence the City's continued, significant involvement in HHC's operations.[3]

Insofar as the City Council argues that justification for Local Law 16 exists because it bears a reasonable, necessary and substantial relationship to the legitimate purpose of furthering public safety, it is irrelevant. As set forth above, even a rational exercise of police power that contravenes controlling state law or is preempted thereby is invalid (*see People v De Jesus, supra*; *Lansdown v Department of Consumer Affairs, supra*). Similarly, the City Council's argument that Local Law 16 is entitled to a strong presumption of validity, while pertinent to a challenge to its legitimacy as a safety measure as opposed to an attempt to protect Local 237 guards, has no bearing on the preemption argument.

---

3. These include: Unconsolidated Laws § 7386 (1) (a) (Health and Hospitals Act § 6 [1] [a]), which provides for funding HHC from the City budget; § 7384 (1) (Health and Hospitals Act § 4 [1]), which deals with the makeup of HHC's Board of Directors; § 7390 (5)-(8) (Health and Hospitals Act § 9 [5]-[8]), which directs that employee grievances be conducted in accordance with the Administrative Code; and § 7386 (7) (Health and Hospitals Act § 6 [7]), which declares that HHC exercise its powers in accordance with policies and plans determined by the City.

Nor are the City Council's other arguments persuasive.

The State Legislature may expressly articulate its intent to occupy a field, but may also do so by implication. An implied intent to preempt may be found in a "declaration of State policy by the Legislature * * * or from the fact that the Legislature has enacted a comprehensive and detailed regulatory scheme in a particular area" (*Consolidated Edison Co. v Town of Red Hook, supra* at 105). In that event, a local government is "precluded from legislating on the same subject matter unless it has received 'clear and explicit' authority to the contrary" (*People v De Jesus, supra* at 469, quoting *Robin v Incorporated Vil. of Hempstead*, 30 NY2d 347, 351).

Here, the Legislature has both impliedly and expressly evinced an intent to preempt.

The intent to preempt may be inferred from the legislative enactment of a comprehensive and detailed regulatory scheme and the purposes therefor. In 1969, the Legislature enacted the Health and Hospitals Corporation Act, establishing HHC as a perceived antidote for the ills that plagued the City's health care system, "born of bureaucratic sclerosis, archaic management practices, inefficiency and a shortage of funds" (*Council of City of N.Y. v Giuliani, supra* at 65). The mission of HHC was "to provide efficient, comprehensive health and medical resources to protect and promote the safety and welfare of New York City residents" (*id.* at 66; Uncons Laws § 7382 [Health and Hospitals Act § 2]).

The City Council's contention that there can be no implied intent because it was never intended that HHC operate independently of the City is unpersuasive. While the City was not getting out of the hospital business,[4] HHC was to facilitate professional management of the hospital system, overcoming the "myriad * * * complex and often deleterious constraints" which inhibited the provision of care by the City in its own operation of the municipal health system (*see Council of City of N.Y. v Giuliani, supra* at 66), "free from control by city authorities" (*see Harlem Hosp. Ctr. Med. Bd. v Hoffman*, 84 AD2d 272, 280, *appeal dismissed* 56 NY2d 807; *see also* Uncons Laws

---

4. *See* letter dated May 8, 1969 by Mayor Lindsay (Bill Jacket, L 1969, ch 1016) quoted in *Council of City of N.Y. v Giuliani (supra* at 70), indicating that "the health care system will continue to be the City's responsibility." "[I]n establishing a public benefit corporation, the City is not getting out of the hospital business. Rather it is establishing a mechanism to aid it in better managing that business for the benefit not only of the public serviced by the hospitals but the entire City health service system." (*Id.*)

§ 7382 [Health and Hospitals Act § 2]). This has caused the courts to hold that HHC has "complete autonomy" over personnel qualifications and outsourcing (*see Brennan v City of New York, supra; Vaughn v City of New York, supra; Matter of Hill v Boufford*, 141 Misc 2d 654; *see also* Uncons Laws § 7385 [5] [Health and Hospitals Act § 5 (5)]) and that HHC is not barred from revising personnel qualifications based on past policies (*see Haynes v Giuliani, supra*).

Second, the intent to preempt is express. Section 7405 of the Unconsolidated Laws (Health and Hospitals Act § 24) provides: "Insofar as the provisions of this act are inconsistent with the provisions of any other law, general, special or local, the provisions of this act shall be controlling." The City Council's contention that this is introductory boilerplate used to cover a situation where the Legislature overlooked the repeal of a contradictory law and does not convey an intent to preempt is unpersuasive. Moreover, Municipal Home Rule Law § 10 (1) (ii) similarly provides that local governments only have the power to adopt laws "not inconsistent with the provisions of the constitution or not inconsistent with any general law."

As to the conflict between Local Law 16 and the Health and Hospitals Act, the City Council's argument, that Local Law 16 does not inhibit or intrude on the mission of HHC to deliver health care, misses the mark. In *New York State Club Assn.* (*supra* at 217), the Court of Appeals explained:

> "Similarly, with respect to inconsistency, we have stated that there need not be an express conflict between State and local laws to render a local law invalid [citation omitted]. *Rather, inconsistency 'has been found where local laws prohibit what would have been permissible under State law or impose "prerequisite 'additional restrictions' " on rights under State law, so as to inhibit the operation of the State's general laws'* [citations omitted]" (emphasis added).

Here, Local Law 16 mandates that HHC utilize security guards with peace officer status appointed under CPL 2.10 (40), which is limited to "[s]pecial officers *employed* by the city of New York or [HHC]" (emphasis added), thereby compelling HHC to retain the Local 237 security guards. In contrast, section 7385 (11) and (12) of the Unconsolidated Laws (Health and Hospitals Act § 5 [11], [12]) gives HHC complete autonomy to fix the guards' qualifications and replace them, as determined

by this Court in *Haynes v Giuliani (supra)*.[5] This inconsistency prohibits what would have been permissible under state law or, at a minimum, imposes prerequisite additional restrictions on HHC's rights under state law, so as to inhibit the operation of the state's general laws. Prior to Local Law 16, HHC was free, under *Haynes*, to outsource security services to private services and its exercise of this right was rendered illegal by Local Law 16's mandate that HHC "shall" use peace officers pursuant to CPL 2.10 (40), or face suit by Local 237 and exposure for punitive damages. The fact that the City Council claims this is not a designed intent because "the subject matter of Local Law 16 is not [HHC's] personnel, but the City's public safety" is irrelevant. Again, "the preemption doctrine does not turn on semantics" (*Lansdown, supra* at 764) and the City Council cannot achieve even laudable goals by making illegal what is specifically allowed by state law (*People v De Jesus, supra*).

Nor is the City Council's argument that it was free to add "reasonable and more stringent" requirements without creating "additional restrictions under State law" persuasive. The cases relied on by the City Council in that regard are distinguishable because no conflict with state law existed therein. In *Sonmax, Inc. v City of New York* (43 NY2d 253), the statute at issue provided for optional statewide procedures and it was anticipated that localities would establish their own legislation. *Ambulance & Med. Transp. Assn. of N.Y. v City of New York* (98 Misc 2d 537, *affd* 70 AD2d 821) concerned state regulations that applied statewide and the court approved local regulations based on the distinction between the City and other parts of the state, a scenario which is inapplicable here because the special conditions in the City with respect to municipal hospitals were the very reason the Health and Hospitals Act was passed.

In this regard, we reject the City Council's claim that portions of the legislative history indicating that the City would continue to be responsible for the health care system allow its

---

5. Section 7385 (12) (Health and Hospitals Act § 5 [12]) gives HHC power "[t]o employ such other employees as may be necessary and *except as otherwise provided herein* to promulgate rules and regulations" governing personnel and to "fix their qualifications" and "other terms of employment." (Emphasis added.) Section 7390 (1) (Health and Hospitals Act § 9 [1]) describes this "except as otherwise provided" limitation as requiring HHC to follow the Civil Service Law and all "other applicable provisions of local or general laws relating to civil service personnel" until such time as HHC adopted its own bylaws, rules and regulations, which it did in 1973.

input in personnel decisions. Even without such direct input, the City remains responsible for the system in that it is obligated to fund it and satisfy other obligations imposed by the Health and Hospitals Act and Operating Agreement. To stretch this legislative intent to allow the City's interference in decisions on personnel qualifications would result in the same "bureaucratic sclerosis" and "archaic management practices" that the Health and Hospitals Act sought to remedy.

The City Council's attempts to limit the holding of cases from *Brennan* to *Haynes*, that HHC has complete autonomy, to their specific facts, is unconvincing. While, in *Haynes*, this Court may have considered whether HHC could be deemed an agency within the meaning of the local law that governed outsourcing, the determination that it could not was grounded in the finding that it had complete autonomy over its personnel, which the City Council could not diminish. *Vaughn*, while dealing with a different issue, reviewed the powers granted to HHC by the Health and Hospitals Act and based its ruling on HHC's autonomy over its personnel. Here, the requirement that security personnel qualify as peace officers clearly intrudes on HHC's managerial flexibility.

The motion court followed the line of cases, such as *Levy* and *Huerta*, which set forth the limited exception to the preemption rule for "generally applicable" local laws that only "incidentally infringe" upon the powers of state created entities. In asserting that Local Law 16 falls within this exception, the City Council urges: (1) to be a law of "general applicability," a local law need not apply to every person, place or thing (*Farrington v Pinckney*, 1 NY2d 74) and may be valid even if only one entity meets the criteria of the rationally defined class at the time the law is enacted (*see Hotel Dorset Co. v Trust for Cultural Resources* (46 NY2d 358); and (2), under *Levy* and its progeny, state law will only exempt HHC from the reach of local laws which interfere with the accomplishment of its purpose of providing health care, and that regulation of non-health care personnel does not fall within this category. These arguments are not enough to place this matter within the exception.

First, Local Law 16 is not a law of general applicability. It applies only to HHC's facilities and not all hospitals in the City (*compare* Local Law 10 of 1986, which required *all* hospitals including those operated by HHC to supply translators in emergency rooms when non-English speaking residents comprise at least 10% of the patient population of a particular hospital's service area; *De Jesus* at 471 [establishments selling alcoholic

beverages not exempt from local laws of general application, e.g., one requiring "smoke alarms in *all* business premises"]; *Levy* and *Maloff* [prohibition against discrimination applies to *all* employers]). While there may be some justification for singling out HHC, that is not enough to waive this requirement. Nor are we persuaded by the City Council's argument that the law is generally applicable "because it uniformly applies to a defined class" of "any corporation of government, the expenses of which are paid in whole or in part from the City treasury which provides health and medical services and operates health facilities *and which* is authorized to employ special officers having peace officer status *as defined in* New York [CPL] § 2.10 (40) * * *" (emphasis supplied). HHC is the only entity that could fall in that class because CPL 2.10 (40) solely applies to special officers employed by the City and HHC, and to no other entity. In this context, the City Council's argument that Local Law 16 is one of general applicability because it applies to all HHC facilities is unpersuasive.

Second, it cannot be said that Local Law 16 has only a tangential or incidental impact because it affects only security guards who are not health care personnel. Under the Health and Hospitals Act, HHC was established to deliver health care in an autonomous fashion. Under the act, the provision of health and medical services and "the exercise by such corporation of the functions, powers and duties as hereinafter provided [including decisions to fix employee qualifications under section 7385 (11) and (12)] constitutes the performance of an essential public and governmental function," which is not limited to health care employees (Uncons Laws § 7382 [Health and Hospitals Act § 2]; *see also Haynes v Giuliani, supra* [security guards]; *Vaughn v City of New York, supra* [clerk]). Once HHC established its own rules, which it did in 1973, this was to be done free from interference by the City.

Nor does the Health and Hospitals Act implicitly limit HHC's powers. While HHC's independence from the City is admittedly subject to exceptions specified in the Health and Hospitals Act (*see e.g. Brennan v City of New York*, 59 NY2d 791, 792), these exceptions do not deal with HHC's powers under Unconsolidated Laws § 7385 (Health and Hospitals Act § 5) to fix personnel qualifications. Nor do they abrogate the judicial determinations finding HHC autonomous of the City in that regard (*see e.g. Haynes v Giuliani, supra*). Indeed, rather than limit HHC's power in this regard, the Health and Hospitals Act expressly provided in section 9 (1) (Uncons Laws § 7390

[1]) that HHC was required to observe local laws governing personnel only until it adopted its own rules in 1973.

*Levy* is distinguishable in that there the Court of Appeals expressly noted that "the Legislature has not preempted the area of human rights because it has expressly recognized the concurrent jurisdiction of the City Commission on Human Rights with respect to matters in New York City" (*supra* at 746). Moreover, while prohibitions against employment discrimination, in the Court's opinion, would not interfere with the function and purpose of the Transit Authority, viz., "to acquire and operate transit facilities" (*id.* at 745), here, as stated above, Unconsolidated Laws § 7832 (Health and Hospitals Act § 2) made HHC's decisions regarding personnel qualifications part of its governmental function.

*Huerta v New York City Tr. Auth. (supra)* is also distinguishable. In *Huerta,* the issue was whether, for purposes of tort law, the Transit Authority was required to adhere to the same regulatory standard concerning escalators as *"any other"* similarly situated landowner engaging in a proprietary function. Here, Local Law 16 does not apply to all similarly situated hospitals. Morever, in *Huerta (supra),* there was a substantial body of law holding that the Transit Authority was not immune from the City's regulatory safety standards when acting in a proprietary as opposed to governmental capacity (*see Dempsey v Manhattan & Bronx Surface Tr. Operating Auth.,* 214 AD2d 334, 334-335; *Farrington v City of New York,* 240 AD2d 697; *D'Arpa v New York City Tr. Auth.,* 239 AD2d 126). In contrast, in *Haynes v Giuliani (supra),* this Court held that HHC was an entity separate and distinct from the City with complete autonomy respecting its personnel.

Finally, in light of our finding that Local Law 16 is invalid, it is unnecessary for us to consider that part of the law which provides for the award of punitive damages for violation of section 17-182 of the Administrative Code.

Accordingly, the judgment (denominated an order) of the Supreme Court, New York County (Alice Schlesinger J.), entered April 11, 2002, which granted defendant City Council's cross motion for summary judgment and declared Local Law 16 of 2001 valid, should be reversed, on the law, without costs, the City Council's cross motion denied and plaintiff HHC's motion for summary judgment and other relief granted to the extent of declaring that Local Law 16 of 2001 is invalid.

SAXE, BUCKLEY, ROSENBERGER and MARLOW, JJ., concur.

Judgment (demonimated an order), Supreme Court, New York County, entered April 11, 2002, reversed, on the law,

without costs, defendant City Council's cross motion for summary judgment declaring Local Law 16 of 2001 valid denied, and plaintiff New York City Health and Hospitals Corporation's motion for, inter alia, summary judgment granted to the extent of declaring Local Law 16 of 2001 invalid.