OPINION OF THE COURT
Edward H. Lehner, J.
The basic issues before the court are: whether plaintiff has shown a mental condition that would entitle her to the tolling provisions of CPLR 208 based on insanity; whether the longer limitation periods provided in Administrative Code of the City of New York (the Code) §§ 8-904 and 10-404 are preempted by the provisions of the CPLR; and, if not, whether this action is viable under said sections. *163 Before the court are motions: (i) by Jeffrey Epstein (Epstein), Nine East 71st Street Corporation, and Jeffrey Epstein and Co. (collectively, defendants) to dismiss the complaint pursuant to CPLR 3211 (a) (5) as being untimely; and (ii) by plaintiff for leave to serve a second amended complaint. Plaintiffs motion to disqualify defendants’ counsel was withdrawn (Apr. 14, 2008 tr at 3). Defendants’ motion to disqualify William Unroch as plaintiffs counsel is denied as moot since he withdrew (tr at 3),* and plaintiff has obtained new counsel.
The original complaint herein was filed on October 16, 2007, naming only Epstein as defendant. In it plaintiff alleges that, when she was under 17 years of age, Epstein lured her to his mansion, removed his clothes and requested that she give him a massage. Plaintiff asserts that she was frightened and agreed to do so, but that “suddenly defendant began pushing plaintiffs head toward his penis and demanded oral sex” (complaint 1HÍ15-17). Plaintiff, who was born in 1983 as a male (tr at 54, 117), further alleges that she engaged in other sexual acts with Epstein in 2000 before she reached the age of 17, and that he thus violated Penal Law §§ 130.40 and 130.55 because she was then “incapable of consent” by reason of being under age. To avoid a statute of limitations defense, plaintiff alleged that “at all times hereinafter mentioned” (complaint 11 28) and “at all times set forth herein” (1Í 29), she was insane as that term is used in CPLR 208. Plaintiff verified the complaint before her then attorney, William Unroch, with whom she then resided (tr at 144).
Within a week after filing the original complaint, plaintiff filed an amended pleading adding as defendants (among others) the other movants herein, asserting that, as owners of the building where Epstein resided, they were negligent in allowing the activity alleged. The amended complaint was also verified by plaintiff, which verification was notarized again by her then attorney.
In the proposed amended pleading, also verified by plaintiff before Mr. Unroch, in addition to the allegations referred to above in the complaint and amended complaint, it is alleged that during 2000 and 2001 Epstein “violently sexually assaulted plaintiff by forcibly touching her private parts and forcing her to perform oral sex on him” (1i 38). In her affidavit sworn to on February 27, 2008, plaintiff avers that this conduct occurred *164 “after April 1, 2001 and before about November 1, 2001” (IT 6). In this pleading, plaintiff alleges that, in addition to the Penal Law sections referred to in the prior pleadings, allegedly violated because plaintiff was under 17 years of age, Epstein also violated Penal Law §§ 130.20, 130.40, 130.50, 130.52, 130.65, and 130.91.
By reason of the new allegations of violent conduct, plaintiff seeks to add causes of action alleging violations of Code §§ 10-401 to 10-406 and sections 8-901 to 8-907. Section 10-403, adopted by the City Council in March 2001, provides for a civil action against a person who commits a “crime of violence,” which is defined as (§ 10-402 [a]):
“an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law ... if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction.”
The portion of the statute that raises a legal issue herein is the provision of section 10-404 (a) that permits an action under the statute to be brought within “six years after the alleged crime of violence,” with a tolling if, “due to injury or disability resulting from [the act of violence] . . . , a person entitled to commence an action under this chapter is unable to do so at the time such cause of action accrues.”
Section 8-904, adopted by the City Council in December 2000, provides for a cause of action against a person who “commits a crime of violence motivated by gender,” which is defined in section 8-903 (b) as “a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim’s gender.” The limitation period for this cause of action is seven years (§ 8-905 [a]), with a tolling provision similar to that discussed above with respect to section 10-404. The proposed second amended complaint states no facts to support the required animus as it contains no more than the conclusory allegation that the alleged crimes of violence were “motivated by gender.”
At the oral argument on April 14, 2008, plaintiff was represented by a former partner of Mr. Unroch, who had withdrawn as attorney for plaintiff. At that time arrangements were made for a psychiatric examination of plaintiff and a hearing before the court on the issue of insanity.
At the hearing held on July 16, 2008, plaintiff was represented by her third attorney, who argued that plaintiff had been *165 incompetent before 2000 and continued to be incompetent up to the present time (tr at 10-12). Notwithstanding such contention, plaintiffs counsel maintained that she could still prosecute this lawsuit without the appointment of a guardian. While the court suggested a dismissal without prejudice, defendants objected due to the great amount of time spent in preparing the defense of the action. Hence, the court proceeded with the hearing.
The evidence showed that during the period of alleged insanity, not only did plaintiff verify the three complaints served in this action, she had executed numerous affidavits in this and other actions she had commenced by complaints she verified before Mr. Unroch, and also executed several contracts. One such action was against a former attorney for malpractice and sexual misconduct, and another was against the New York Post for defamation and other claims based on an article published regarding plaintiffs relationship with Epstein. In a recent decision in that case (Ava v NYP Holdings, Inc., 20 Misc 3d 1108[A], 2008 NY Slip Op 51281[U], *3-4 [2008]), Justice Tolub of this court dismissed most of the claims asserted, noting that the complaint in that action stated that “[p]laintiff was born a man but always viewed herself as a girl. . . ; [p]laintiff was hospitalized multiple times for psychiatric problems . . . ; [p]laintiff was a heavy drug user . . . ; [and] [p]laintiff is HIV positive.” The testimony at the hearing before this court supported such allegations. In denying a motion to seal the records in that case, Justice Tolub ruled that, since “[p]laintiff has commenced three cases under her own name in which she openly discusses her sex life . . . , [she] cannot turn the clock back to seal the documents now” (2008 NY Slip Op 51281[U], *8).
At the hearing in this case, the only medical testimony presented was that of a psychiatrist, Dr. Robert Goldstein (who is also a lawyer), who examined plaintiff on behalf of defendants. He testified that, although plaintiff had been admitted to severed psychiatric facilities since 2000, all but one of such admissions had been voluntary (tr at 43). He concluded that “there is absolutely no indication that she is or ever was ‘insane,’ as within the meaning of CPLR 208” (id. at 36). He opined that her condition is primarily due to “substance abuse, mainly heroin addiction and other drugs” (id. at 37). He stated that currently plaintiff has “primarily male characteristics,” but is desirous of having a sex change operation, which would cost $10,000, and she is saving money in order to have that proce *166 dure (id. at 65). He further testified that plaintiff suffered from depression and anxiety (id. at 38); that while hallucinations were a hallmark of psychiatric illness, he did not believe that plaintiff had hallucinations (id. at 53); that plaintiff appeared normal and without any signs of mental disorder when he examined her in June 2008 (id. at 59); and that plaintiff does not have bipolar disease, but even if she had such disease this condition is treatable (id. at 95).
In the leading case interpreting the tolling provision for insanity provided in CPLR 208, the Court in McCarthy v Volkswagen of Am. (55 NY2d 543, 548-549 [1982]) wrote that:
“Indeed, the legislative history of CPLR 208 indicates that the Legislature intended the toll for insanity to be narrowly interpreted . . .
“[and it] meant to extend the toll for insanity to only those individuals who are unable to protect their legal rights because of an over-all inability to function in society. . . .
“In reaching this conclusion, it should be noted that a contrary interpretation of the statute could greatly and perhaps inappropriately expand the class of persons able to assert the toll for insanity and could, concomitantly, weaken the policy of the Statutes of Limitation as statutes of repose.” (See also Eisenhach v Metropolitan Transp. Auth., 62 NY2d 973 [1984].)
In evaluating a claim of insanity, it was held in Burgos v City of New York (294 AD2d 177, 178 [1st Dept 2002]) that a key consideration was that “plaintiff was not only capable of protecting his legal rights but in fact did so by engaging an attorney and verifying a notice of claim . . . [and] also signed authorizations.” (See also Lacks v Marcus, 68 AD2d 815, 816 [1st Dept 1979] [plaintiff “has been engaged in lawsuits arising out of this and related matters continuously”]; Matter of Cerami v City of Rochester School Dist., 82 NY2d 809, 813 [1993] [“claimant was competent to file a worker’s compensation claim . . . , consulted with numerous attorneys and filed discrimination complaints”]; Becker v Waldbaum, Inc., 221 AD2d 396 [2d Dept 1995].)
Here, the credible testimony of Dr. Goldstein demonstrated that plaintiff has never been and is not now “insane” under the meaning of that term in section 208. The effects of her drug addiction do not establish insanity. Moreover, the fact that she has *167 executed numerous contracts, verified several complaints, and executed affidavits in this and other actions instituted by her demonstrates that she is able to protect her legal rights and does not lack an overall ability to function in society. Accordingly, the court finds that she is not entitled to the tolling provisions of CPLR 208 based on her alleged insanity.
Under CPLR 215 (3), an action asserting an intentional tort must be commenced within one year of the event, and such limitation has been held applicable to a sexual assault. (See Krioutchkova v Gaad Realty Corp., 28 AD3d 427 [2d Dept 2006]; Yong Wen Mo v Gee Ming Chan, 17 AD3d 356 [2d Dept 2005]; Sharon B. v Reverend S., 244 AD2d 878, 879 [4th Dept 1997] [“Regardless of how it is pleaded, sexual abuse is an intentional tort subject to the one-year Statute of Limitations”].)
While subdivision (8) (a) of CPLR 215 provides for an extension of the one-year limitation period provided therein when “a criminal action against the same defendant has been commenced with respect” to the claim asserted in the civil action, here no criminal proceeding had ever been commenced against Epstein based on the claims asserted by plaintiff. CPLR 213-b also provides for an extension of time to commence an action by a crime victim where the defendant has been convicted of the crime on which the civil action is premised.
CPLR 213-c, enacted in 2006, provides for a five-year limitation period for injuries suffered
“as a result of acts by such defendant of rape in the first degree as defined in section 130.35 of the penal law, or criminal sexual act in the first degree as defined in section 130.50 of the penal law, or aggravated sexual abuse in the first degree as defined in section 130.70 of the penal law.”
The only violation of the foregoing criminal statutes alleged in the proposed amended complaint (H11112, 117, 125, 134) is section 130.50 (1), which provides that a “person is guilty of criminal sexual act in the first degree when he . . . engages in oral sexual conduct . . . with another person: [b]y forcible compulsion.” However, this section is of no aid to plaintiff as her claim is untimely under the said five-year limitation period as the alleged forcible compulsion all occurred prior to November 1, 2001, plaintiff reached the age of 18 on November 15, 2001, and this action was not commenced until October 16, 2007. Thus, under the provisions of article 2 of the CPLR, the claims asserted against Epstein in the amended complaint are untimely. *168 The negligence claims against the other moving defendants are time-barred by the three-year limitation period of CPLR 214. Hence, defendants’ motion to dismiss the amended complaint as against them is granted.
The cross motion for leave to serve a second amended complaint asserting claims under the Code section referred to above is denied as lacking in merit for the reasons stated below. The court finds that the action of the City Council extending the statute of limitations for certain intentional torts by creating subclasses of such torts and setting forth longer periods of repose for such subclasses than is provided in article 2 of the CPLR is violative of the preemption doctrine. “Statutes of Limitation are essentially arbitrary time limitations barring the commencement of an action, and they reflect the legislative judgment that individuals should be protected from stale claims” (McCarthy v Volkswagen of Am. at 548).
“The purpose of the Statute of Limitations is to force a plaintiff to bring his claim within a reasonable time, set out by the Legislature, so that a defendant will have timely notice of a claim against him, and so that stale claims, and the uncertainty they produce, will be prevented” (Vastóla v Maer, 48 AD2d 561, 564 [2d Dept 1975], affd 39 NY2d 1019 [1976]).
On the issue of preemption, in Albany Area Bldrs. Assn, v Town of Guilderland (74 NY2d 372, 377 [1989]), the Court wrote:
“Where the State has preempted the field, a local law regulating the same subject matter is deemed inconsistent with the State’s transcendent interest, whether or not the terms of the local law actually conflict with a State-wide statute. Such local laws, ‘were they permitted to operate in a field preempted by State law, would tend to inhibit the operation of the State’s general law and thereby thwart the operation of the State’s overriding policy concerns.’ (Jancyn Mfg. Corp. v County of Suffolk, 71 NY2d 91, 97.) Moreover, the Legislature need not express its intent to preempt. That intent may be implied from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme, including the need for State-wide uniformity in a given area .... A comprehensive, *169 detailed statutory scheme, for example, may evidence an intent to preempt.” (Citations omitted; see also New York City Health & Hosps. Corp. v Council of City of N.Y., 303 AD2d 69 [1st Dept 2003]; Matter of Council of City of N.Y. v Bloomberg, 16 AD3d 212 [1st Dept 2005].)
In article 2 of the CPLR, the Legislature has set forth a detailed scheme with respect to the time for the commencement of various types of litigation, including a special time limitation for claims involving criminality and sexual misconduct. The Council of the City of New York cannot create its own subclasses of intentional torts and thus modify the detailed scheme created by the Legislature for the entire state. Accordingly, the lengthier periods provided in the Code sections relied upon herein by plaintiff are invalid as violative of the preemption doctrine.
Moreover, even if the lengthier statutory periods were valid, the proposed second amended complaint fails to state any facts showing that Epstein’s alleged acts demonstrated any hostility based on gender. Thus, plaintiffs claims under section 8-903 would not be viable and dismissal would ensue. Regarding the claims under section 10-403, first raised in the motion to amend served in February 2008, the statute of limitations expired on November 15, 2007, six years after plaintiff reached majority. CPLR 203 (f) provides that a “claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading.” Since the first amended complaint was based solely on plaintiff’s claims of violations of sections of the Penal Law barring sexual activity with a person under 17 years of age, there is no basis to warrant saving the proposed cause of action based on a relation back theory as the proposed second amended complaint alleges new claims of violent sexual assaults upon plaintiff. (See Krioutchkova v Gaad Realty Corp., supra; Infurna v City of New York, 270 AD2d 24 [1st Dept 2000]; Hager v Hager, 177 AD2d 401 [1st Dept 1991].) Since the motion to amend was made more than six years after plaintiff reached majority and after the last alleged assault on November 1, 2001, the new claims asserted therein are untimely under section 10-404. Further, it is *170 noted that if application of the relation back doctrine were appropriate, the only claims not untimely would be based on acts between October 16, 2001 (six years prior to the filing of the complaint herein) and November 1, 2001 (when the last assault allegedly occurred).
In light of the foregoing, the motion of defendants to dismiss the complaint as against them is granted.

 Unless otherwise noted, transcript references are to the hearing of July 16, 2008.